CITY OF AKRON, Appellee,

v.

LEWIS, Appellant.

[Cite as *Akron v. Lewis,* 179 Ohio App.3d 649, 2008-Ohio-6256.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24236.

Decided Dec. 3, 2008.

650

Max Rothal, Director of Law, Douglas J. Powley, Chief City Prosecutor, and Gerald Larson, Assistant City Prosecutor, for appellee.

Robert Lewis, pro se.

WHITMORE, Judge.

{¶ 1} Defendant-appellant, Robert Lewis, appeals from his convictions and sentence in the Akron Municipal Court. This court affirms in part and vacates in part.

I

{¶ 2} On March 13, 2007, Edward Hawkins took his dog, a Boston terrier named Skippy, for a walk close to his home on Dorchester Road. During the walk, another dog attacked Skippy. Hawkins managed to kick the other dog until it released Skippy and ran towards Lewis's home. Hawkins recognized the dog that had attacked as Lewis's female Akita named Babi. As a result of the attack, Skippy received medical treatment, but eventually recovered.

{¶ 3} On September 25, 2007, Hawkins walked Skippy to the end of his driveway near a brick pillar. When Skippy reached the pillar, Babi rapidly emerged from the other side of the pillar, bit Skippy around the neck, and pulled Skippy out of his leash. Hawkins, who opted to carry a small crowbar with him after the initial attack on Skippy, began to hit Babi with the crowbar. Babi released Skippy and ran, but Skippy died as a result of the injuries he sustained. Hawkins telephoned Animal Control and notified them of Babi's fatal attack on Skippy.

{¶ 4} On September 26, 2007, Akron Animal Control Warden Don Miller filed a complaint and summons in the Akron Municipal Court charging Lewis with the following Akron City Code ("A.C.C.") violations: (1) failure to register a dog, pursuant to A.C.C. 92.08, (2) failure to vaccinate a dog, pursuant to A.C.C. 92.11, (3) owning a dog found to be at large and not under his continuous control, pursuant to A.C.C. 92.25(B)(1), and (4) owning a dog that bites or causes physical

harm to another domestic animal while off the premises of the owner, pursuant to A.C.C. 92.25(B)(4). The next day, the Akron Municipal Court ordered that Babi be immediately seized and impounded in the Summit County Animal Shelter for public safety reasons pending the determination of Lewis's case.

{¶ 5} On October 16, 2007, Warden Miller filed another complaint and summons in the Akron Municipal Court, this time charging Lewis with the following Summit County Ordinance ("S.C.O.") violations: (1) failure to restrain a dangerous or vicious dog, pursuant to S.C.O. 505.22, and (2) negligently allowing a dog in his custody or care to cause serious physical harm to another dog while off his premises, pursuant to S.C.O. 505.24. On March 24, 2008, Lewis filed an unsuccessful motion to dismiss the S.C.O. charges.

{¶ 6} The matter proceeded to a jury trial on May 5, 2008. The jury found Lewis guilty of violating A.C.C. 92.25(B)(4), S.C.O. 505.22, and S.C.O. 505.24. The trial court then found Lewis guilty of failure to control,[1] pursuant to A.C.C. 92.25(B)(1), a minor misdemeanor, and dismissed the remaining charges of failing to register and vaccinate Babi. For his violation of A.C.C. 92.25(B)(4), the court sentenced Lewis to restitution, a $500 fine, and 180 days in jail, suspended on the condition that Lewis complete 30 days of house arrest. The court also ordered that Babi be destroyed for Lewis's violation of A.C.C. 92.25(B)(4), but suspended the execution of its sentence pending the outcome of this appeal. The court sentenced Lewis to court costs on the remaining counts.

{¶ 7} Lewis now appeals from the trial court's judgment and raises ten assignments of error for our review. For ease of analysis, we rearrange several of the assignments of error.

## II

### Assignment of Error Number Two

The court failed to [arraign] the [appellant], therefore depriving [appellant] of due process of law. The court violated Crim R [procedure] 5,10,11,43 (a)(sic).

{¶ 8} In his second assignment of error, Lewis seems to argue that the trial court failed to arraign him in accordance with the Ohio Rules of Criminal Procedure. Specifically, he argues that the trial court did not follow the procedures set forth in Crim.R. 5 and 10. We disagree.

---

1. The trial court acted as the trier of fact on Lewis's failure-to-control charge because there is no right to a jury trial on minor misdemeanor charges.

■■ {¶ 9} Crim.R. 5 governs the procedure for initial appearances in criminal cases, while Crim.R. 10 governs arraignment procedures. Under both rules, "the court is required to advise the defendant of his constitutional rights, including the right to counsel, at the initial appearance or arraignment." *State v. Eschrich*, 6th Dist. No. OT–06–045, 2008-Ohio-2984, 2008 WL 2468572, at ¶ 21. The court also must " 'inform the accused of the charges made against him and * * * allow him to offer an answer to those charges.' " *State v. Bickel*, 9th Dist. No. 07CA0053, 178 Ohio App.3d 535, 2008-Ohio-5747, 899 N.E.2d 154, at ¶ 9, quoting *State v. Hawkins* (Mar. 24, 1998), 10th Dist. No. 97APA06–740, 1998 WL 134321, at *2. Any alleged defects in this procedure must be raised by objection prior to trial. Crim.R. 12(C)(1) (providing that "objections based on defects in the institution of [a] prosecution" must be raised before trial). If a defendant fails to raise an issue regarding the arraignment prior to trial, he forfeits the objection. *Bickel* at ¶ 9, citing Crim.R. 12(H).

{¶ 10} It is unclear whether the court below brought Lewis before it for both an initial appearance and an arraignment. Nevertheless, the court's journal entry, located on the back of Lewis's criminal file folder, indicates that Lewis entered a plea of not guilty after "having been informed of his * * * rights pursuant to Criminal Rule 5 and 11." The journal entry also indicates that after the city brought new charges against Lewis on October 16, 2007, for S.C.O. violations, he waived arraignment on the new charges. Thus, it would appear from the trial court's journal entry that Lewis was informed of his rights at the time of his initial charges and voluntarily waived another presentation of those rights when additional charges were brought against him. Moreover, Lewis has not filed a transcript of the proceedings that he claims were deficient. Without a transcript, this court has no way of determining whether Lewis objected to any alleged defects "in the institution of [his] prosecution" so as to preserve his argument for appeal. See Crim.R. 12(C)(1); *State v. Noble*, 9th Dist. No. 07CA009083, 2007-Ohio-7051, 2007 WL 4554247, at ¶ 12. We must presume regularity of the trial court's proceedings and conclude that Lewis has not met his burden of demonstrating error on appeal. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. Consequently, Lewis's second assignment of error is overruled.

### Assignment of Error Number Three

The court failed to rule on the [appellant's] pretrial motions [therefore] depriving [appellant] of due process of law as [guaranteed] by the Ohio and United States [Constitution], the court violated Crim R. 19(5)(d)(1). Violated Sixth Amendment (sic).

{¶ 11} In his third assignment of error, Lewis argues that the trial court offended his due process rights by failing to rule on his pretrial motions "for over seven months." He seems to argue that the trial court had no authority to orally rule on his motions because magistrate's orders must be in writing, filed with the clerk, and served upon the parties or their attorneys pursuant to Crim.R. 19.

{¶ 12} Initially, we note that Crim.R. 19 applies only to magistrates and has no application here. The trial court personally handled every aspect of Lewis's case. Nothing in the record indicates that a magistrate was ever involved. Accordingly, Lewis's argument that the trial court somehow violated Crim.R. 19 lacks merit.

{¶ 13} The record also does not support Lewis's proposition that the trial court failed to rule on his pretrial motions "for over seven months." For instance, Lewis filed his motion to dismiss on March 24, 2008, and the trial court journalized its order denying the motion on May 2, 2008. Although Lewis filed a motion to release Babi on October 13, 2007, and the trial court did not journalize its denial of that motion until May 2, 2008, the transcript of a March 28, 2008 proceeding[2] contains numerous references to the trial court's oral denial of Lewis's motion at an earlier hearing. Thus, the record contains evidence that Lewis was aware of the trial court's ruling well before it was journalized. Because Lewis has not shown that the trial court failed to rule on his motions in a timely manner, Lewis's third assignment of error is overruled.

### Assignment of Error Number Seven

The court [erred] in motion to dismiss the [appellant] stating that SCCO 505.22 and 505.24 are unconstitutional [labeling] certain dogs "dangerous" or vicious without providing their owners due process of law (sic).

{¶ 14} In his seventh assignment of error, Lewis argues that the trial court erred in denying his motion to dismiss based on the argument that Summit County's vicious-dog ordinances are unconstitutional. Specifically, he argues that he was not provided with a meaningful opportunity to challenge Babi's classification as a dangerous or vicious dog in violation of *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846. We agree.

{¶ 15} This court reviews de novo a trial court's denial of a motion to dismiss. *State v. Osburn*, 9th Dist. No. 07CA0054, 2008-Ohio-3051, 2008 WL 2485160, at ¶ 12. In doing so, we recognize that "[s]tatutes enjoy a strong presumption of constitutionality." *State v. Shipley*, 9th Dist. No. 03CA008275,

---

**2.** The transcript provided to this court does not indicate the purpose for this proceeding, but a notation on Lewis's criminal file folder indicates that the court held a status hearing on this date.

2004-Ohio-434, 2004 WL 199829, at ¶ 78. One who seeks to challenge the constitutionality of a statute bears the burden of proving the unconstitutionality beyond a reasonable doubt. Id., citing *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38–39, 616 N.E.2d 163.

{¶ 16} In *Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, the Supreme Court struck down R.C. 955.22, Ohio's vicious-dog statute. *Cowan* at syllabus. The statutory provisions at issue in *Cowan* provided as follows:

(D) Except when a dangerous or vicious dog is lawfully engaged in hunting or training for the purpose of hunting and is accompanied by the owner, * * * no owner * * * of a dangerous or vicious dog shall fail to do either of the following:

(1) While that dog is on the premises of the owner, * * * securely confine it at all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained. * * *

(E) No owner * * * of a vicious dog shall fail to obtain liability insurance with an insurer authorized to write liability insurance in this state providing coverage in each occurrence, subject to a limit, exclusive of interest and costs, of not less than one hundred thousand dollars because of damage or bodily injury to or death of a person caused by the vicious dog.

R.C. 955.22 utilized R.C. 955.11's definition of the terms "dangerous dog" and "vicious dog." Those statutory provisions provided as follows:

(1)(a) "Dangerous dog" means a dog that, without provocation, * * * has chased or approached in either a menacing fashion or an apparent attitude of attack, or has attempted to bite or otherwise endanger any person, while that dog is off the premises of its owner * * * and not under the reasonable control of its owner, * * * or not physically restrained or confined in a locked pen which has a top, locked fenced yard, or other locked enclosure which has a top. * * *

(4)(a) "Vicious dog" means a dog that, without provocation and subject to division (A)(4)(b) of this section, meets any of the following:

(i) Has killed or caused serious injury to any person;

(ii) Has caused injury, other than killing or serious injury, to any person, or has killed another dog.

The Supreme Court reviewed R.C. 955.22's scheme and determined that it was facially unconstitutional due to its "fail[ure] to provide dog owners a meaningful opportunity to be heard on the issue of whether a dog is 'vicious' or dangerous.'" *Cowan* at syllabus.

{¶ 17} The Supreme Court reasoned that R.C. 955.22 permitted a dog warden to unilaterally classify a person's dog as vicious or dangerous and subject that person to regulatory burdens and criminal sanctions without any prior opportunity for that person to challenge the warden's determination. *Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 11–13. The court specifically noted that the statute did not provide a dog owner with "safeguards, such as a right to appeal or an administrative hearing." Id. at ¶ 13. Once the warden determined that a dog was either dangerous or vicious, that determination triggered R.C. 955.22's provisions. Id.

{¶ 18} Lewis argues that the trial court erred in denying his motion to dismiss because S.C.O.'s dangerous-/vicious-dog provisions are indistinguishable from the statutory scheme that the Supreme Court struck down in *Cowan*. S.C.O. 505.21(a) defines a "dangerous dog" as a dog that:

[W]ithout provocation, has chased or approached in either a menacing fashion or an apparent attitude of attack, or has attempted to bite or otherwise endanger, any person, or bites or causes physical harm to another dog, cat or other animal. * * *

S.C.O. 505.21(d) defines a "vicious dog" as a dog that "without provocation, has either: (1) killed or caused injury to any person; or (2) killed another dog." After determining that Babi was dangerous or vicious, Warden Miller filed charges against Lewis for violations of S.C.O. 505.22 and 505.24. S.C.O. 505.22 provides as follows:

(a) No owner of a dangerous or vicious dog shall fail to do either of the following, except when the dog is lawfully engaged in hunting or training for the purpose of hunting and accompanied by the owner:

(1) While on the premises of the owner, securely confine such dog at all times in a locked pen which has a top, locked fenced yard or other locked enclosure which has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained and unable to reach any sidewalk or area where any invitee or licensee would normally be expected to travel.

* * *

(b) Whoever violates this section is guilty of a misdemeanor of the first degree.

S.C.O. 505.24 provides as follows:

(a) No person, being the owner * * * of any dangerous or vicious dog within the County, whether hunting, training or otherwise, shall negligently, or by reason of a violation of any provision of this chapter, allow such dog, when off the premises of the owner, to cause physical harm to any person or serious physical harm to another dog, cat or other animal.

(b) Lack of intent on the part of such person to allow such dog to injure a person, other dog, cat or other animal, or the lack of knowledge of the violent propensities of such dog, is not a defense to a violation of this section. (c) Whoever violates this section is guilty of a misdemeanor of the third degree.

Although Warden Miller did not cite Lewis for additional violations, S.C.O. 505 also contains provisions requiring dangerous-/vicious-dog owners to obtain liability insurance on their dogs. R.C. 505.26.

{¶ 19} Our review of S.C.O. 505's scheme leads us to conclude that it is indistinguishable from the scheme struck down in *Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846. Once Warden Miller determined that Babi was dangerous or vicious, S.C.O. 505's provisions went into effect, and Lewis was subjected to them without any meaningful opportunity to challenge Babi's classification as a dangerous or vicious dog. See *Cowan* at syllabus. The state argues that S.C.O. 505.22 and 505.24 are not unconstitutional because the issue of whether a dog is dangerous or vicious is an element of the charge to be proven by the municipality at trial. Therefore, someone in Lewis's position has the opportunity to challenge his dog's classification at trial. Yet, the Supreme Court specifically rejected this argument in *Cowan*. See *Cowan* at ¶ 11–12. The court noted as follows:

We find it inherently unfair that a dog owner must defy the statutory regulations and become a criminal defendant, thereby risking going to jail and losing [his] property, in order to challenge a dog warden's unilateral decision to classify [his] property. The statute does not provide [a dog owner] a right to be heard in a meaningful time and in a meaningful manner on the issue of whether [his] dogs were vicious or dangerous.

Id. at ¶ 13. Accordingly, a trial does not constitute a "meaningful opportunity" for a dog owner to contest their dog's classification. Id.

{¶ 20} Because S.C.O. 505.22 and 505.24 are indistinguishable from the statute struck down in *Cowan*, we must conclude that the trial court erred in denying Lewis's motion to dismiss those charges. See *Highland Hts. v. Manos*, 8th Dist. No. 84238, 2004-Ohio-6016, at ¶ 5–10 (striking down dangerous-/vicious-dog ordinance as unconstitutional because it denied owner a meaningful opportunity to challenge a vicious-dog classification prior to trial). Accordingly, Lewis's seventh assignment of error is sustained, and his convictions for violating S.C.O. 505.22 and 505.24 are hereby vacated.

### Assignment of Error Number One

The court violated the [appellant's] [Fifth Amendment] rights where the court seized [appellant's] dog without proper notice or hearing, without due process of law.

{¶ 21} In his first assignment of error, Lewis argues that the trial court violated his Fifth Amendment rights by seizing Babi without a prior court determination. Specifically, he argues that A.C.C. 92.26 unconstitutionally permits the city to seize a dog without proof that the dog is a "vicious dog at large."

{¶ 22} The record reflects that Lewis failed to raise this argument in the trial court. Although he challenged the constitutionality of S.C.O. 502.24 and 505.22, he never made a similar challenge on the basis of A.C.C. 92.26. The " '[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a [forfeiture] of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.' " *State v. Dent,* 9th Dist. No. 23855, 2008-Ohio-660, 2008 WL 441634, at ¶ 7, quoting *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus, limited by *In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286. While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so. See *State v. Hairston,* 9th Dist. No. 05CA008768, 2006-Ohio-4925, 2006 WL 2716833, at ¶ 11. Because Lewis forfeited this issue on appeal and has not raised a claim of plain error, we must conclude that his first assignment of error lacks merit.

## Assignment of Error Number Four

The court [erred] in trying the appellant twice [for the] same crime. Violating his Fifth [Amendment] rights against double jeopardy. With [multiple] punishments for the same offense (sic).

{¶ 23} In his fourth assignment of error, Lewis argues that the trial court violated his Fifth Amendment double-jeopardy rights by "trying [him] twice" for the same crime. Specifically, he argues that the city should not have been permitted to convict him of both A.C.C. and S.C.O. violations, because the same conduct supported both sets of violations. As we have already determined that the trial court erred in not dismissing the S.C.O. violations and have vacated those convictions, Lewis's fourth assignment of error is moot, and we decline to address it. See App.R. 12(A)(1)(c).

## Assignment of Error Number Five

The court [erred] by [prejudicing] the jury. By using [an] ex post facto approach (sic).

{¶ 24} In his fifth assignment of error, Lewis argues that the trial court erred by allowing the city to inform the jury that Babi had engaged in a previous attack, thereby suggesting that Lewis was aware of her vicious behavior. Specif-

ically, he avers that the city should not have been allowed to introduce evidence with regard to Babi's March 13, 2007 attack on Skippy.

{¶ 25} The record reflects that Lewis filed a motion in limine, seeking to exclude the evidence of Babi's March attack, but failed to object to the evidence at trial. "[A] motion in limine does not preserve the record on appeal [;] * * * [a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection * * * when the issue is actually reached * * * at trial." (Emphasis omitted.) *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 28 OBR 285, 503 N.E.2d 142, quoting Palmer, Ohio Rules of Evidence Manual (1984), at 446. The "failure to timely advise a trial court of possible error, by objection or otherwise, results in a [forfeiture] of the issue for purposes of appeal." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099. Since Lewis forfeited this issue in the court below by failing to contemporaneously object to the evidence of Babi's March attack at trial and has not argued plain error on appeal, we must conclude that his fifth assignment of error lacks merit. See *Hairston*, 2006-Ohio-4925, 2006 WL 2716833, ¶ 11 (placing the burden upon an appellant to argue plain error on appeal).

### Assignment of Error Number Six

Appellant was deprived of due [process] of law where his conviction is against the sufficiency and manifest weight of the evidence.

{¶ 26} In his sixth assignment of error, Lewis argues that his convictions are based on insufficient evidence and are against the manifest weight of the evidence. Specifically, he argues that there was no evidence that Babi was the dog responsible for attacking Skippy. We disagree.

{¶ 27} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600, 2000 WL 277908, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 274, 574 N.E.2d 492. Furthermore:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind

of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

Id. at paragraph two of the syllabus; see also *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. In *State v. Roberts*, this court explained:

[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.

(Emphasis omitted.) *State v. Roberts* (Sept. 17, 1997), 9th Dist. No. 96CA006462, 1997 WL 600669, at *2. Accordingly, we address Lewis's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.

{¶ 28} In determining whether a conviction is against the manifest weight of the evidence, an appellate court:

[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. A weight-of-the-evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; see also *Otten*, 33 Ohio App.3d at 340, 515 N.E.2d 1009.

{¶ 29} Because we have vacated Lewis's S.C.O. convictions, we limit our analysis to his two remaining convictions. A.C.C. 92.25 provides that:

(B) Any person owning * * * a dog shall be strictly liable if such dog is found to:

(1) Be at large within the city unless securely attached upon a leash held in the hand of a person in a manner which continuously controls the dog.

* * *

(4) Bite or otherwise cause physical harm to any * * * domestic animal * * * while the dog is off the premises of the owner, or while on premises which are not exclusively controlled by the owner.

A dog is "at large" if it is off the premises of the owner. A.C.C. 92.25(A).

{¶ 30} Hawkins testified that Lewis's female Akita, Babi, attacked Skippy, his Boston terrier, when he walked Skippy to the end of his driveway on September 25, 2007. Hawkins indicated that he recognized Babi based on her size, weight, color, and the fact that she had attacked Skippy in March 2007. Hawkins observed that Lewis had pens for his Akitas in his back yard, but routinely tied the dogs to some type of leash or chain just outside the pens. He further observed that although Lewis's yard was fenced in, the chain-link fence stood only about four feet high. Hawkins confirmed that Skippy died as a result of the September attack.

{¶ 31} Mary Jo Rozke, another one of Hawkins's neighbors, testified that she heard what sounded like a "vicious" dog attack occur on September 25, 2007. Rozke admitted that she never saw the attack, but testified that Lewis's dogs frequently barked and growled loudly at her whenever she walked by their yard. She further testified that on at least one occasion, she had seen one of the dogs jump Lewis's chain-link fence.

{¶ 32} Warden Miller testified that Hawkins reported the attack on Skippy to him after Hawkins returned home from the veterinarian's office. He testified that Hawkins showed him where the attack had occurred, but that he did not see any blood in the area because "[t]hey'd already washed off the driveway" by the time he arrived. Warden Miller walked over to Lewis's residence and observed Lewis's two Akitas in the back yard. He testified that the larger, male Akita was chained inside the fenced yard, but that the smaller, female Akita was loose inside the yard. Warden Miller admitted that he did not see any blood on the female Akita, but explained that dogs frequently clean themselves after an attack. He also opined that it would be common for an Akita to act aggressively and that an Akita like Babi could effortlessly jump a four-foot fence such as the one Lewis had surrounding his yard.

{¶ 33} Kathy Wheeler, Lewis's mother, testified that when she left for work at 8:00 a.m. on September 25, 2007, both of Lewis's Akitas were locked in their pens in the back yard. She claimed that when she arrived home approximately an hour to an hour and a half later, Lewis had the female Akita, Babi, in the kitchen. According to Wheeler, Warden Miller arrived at the house about ten to 15 minutes after she arrived at home. Wheeler claimed that Warden Miller told her and Lewis that he knew Babi had killed Skippy. Wheeler also claimed that Warden Miller told her that she would not want to see the evidence of the attack on Hawkins's property because "[i]t's like a blood bath." Accordingly, Wheeler's

testimony directly contradicted Warden Miller's testimony, in which he stated that he did not arrive at Hawkins's home immediately after the attack, that Hawkins or one of his family members had already cleaned the area where the attack occurred before his arrival, and that Babi was still loose inside Lewis's back yard when he arrived at Lewis's house.

{¶ 34} Christina Hawkins, Hawkins's daughter, and her boyfriend, Charles Hutson, testified that they went and spoke to Lewis at his home after the fatal attack on Skippy. Both testified that Lewis had Babi in the basement at that point because "he didn't want anyone to take [her]." Both also testified that Lewis essentially acknowledged that Babi had attacked Skippy by indicating that he might be willing to compensate Hawkins in some manner for Skippy's death.

{¶ 35} Based on our review of the record, we cannot conclude that the jury lost its way in convicting Lewis of violating A.C.C. 92.25(B)(4) because Babi caused physical harm to Skippy while off Lewis's premises. Furthermore, we cannot conclude that the trial judge lost his way in convicting Lewis of violating A.C.C. 92.25(B)(1) because Babi was "at large" by being off Lewis's premises when the attack occurred. Thus, Lewis's two convictions are not against the manifest weight of the evidence.

{¶ 36} Having disposed of Lewis's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. See *Roberts*, 9th Dist. No. 96CA006462, 1997 WL 600669, at *2. Lewis's sixth assignment of error lacks merit.

### Assignment of Error Number Eight

The trial court [erred] by finding the appellant guilty of control of dog (sic).

{¶ 37} In his eighth assignment of error, Lewis argues that the trial court erred by not submitting his failure-to-control charge, pursuant to A.C.C. 92.25(B)(1), to the jury with his other charges. We disagree.

{¶ 38} A violation of A.C.C. 92.25(B)(1) is a minor misdemeanor. A.C.C. 92.99(D). "There is no right to a jury trial for a minor misdemeanor offense." *State v. Kearns*, 9th Dist. No. 06CA0020–M, 2006-Ohio-5811, 2006 WL 3174404, at ¶ 16, citing R.C. 2945.17(B)(1). Accordingly, Lewis's eighth assignment of error is overruled.

### Assignment of Error Number Nine

Appellant was denied his rights to due process and of [effective] assistance of counsel as guaranteed by the Sixth and Fourteenth [Amendments].

{¶ 39} In his ninth assignment of error, Lewis argues that he was deprived of the effective assistance of counsel because his counsel "refused to state objections

to the court which he new (sic) would [ ] highly influence the jury and [Lewis] wouldn't be able to appeal." We disagree.

{¶ 40} To prove an ineffective-assistance claim, Lewis must show two things: (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To demonstrate prejudice, Lewis must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674. Furthermore, the court need not address both *Strickland* prongs if an appellant fails to prove either one. *State v. Ray,* 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10.

{¶ 41} Lewis does not identify any of the material or evidence that he believes was objectionable at trial. An appellant bears the burden of demonstrating error on appeal through citations to the record. See App.R. 16(A)(7). Without any indication of what evidence Lewis believes was objectionable, this court cannot determine whether his counsel's performance was deficient. See *Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Consequently, Lewis's ninth assignment of error is overruled.

### Assignment of Error Number Ten

[Appellant's] sentencing is cruel and unusual punishment for the crime.

{¶ 42} In his tenth assignment of error, Lewis argues that his sentence is cruel and unusual punishment. He seems to argue that the trial court should have issued him a more lenient sentence because defendants in other dog-bite cases more egregious than his own have received more lenient sentences. We disagree.

{¶ 43} A trial court has full discretion to sentence a defendant to a prison term so long as the term falls within the statutory range designated for the offense. *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. To determine whether a trial court exceeded its sentencing authority in issuing a sentence, this court employs a two-step approach. *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 4.

First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is

satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard.

Id. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Furthermore, when applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 44} The trial court sentenced Lewis to restitution, a $500 fine, 180 days in jail, suspended on the condition that Lewis complete 30 days of house arrest, and court costs based on his violation of A.C.C. 92.25(B)(4). A violation of A.C.C. 92.25(B)(4) constitutes a first-degree misdemeanor. A.C.C. 92.99(B). For a first-degree misdemeanor offense, a court may sentence a defendant to a maximum of 180 days in jail and may fine a defendant up to $1,000. R.C. 2929.24(A)(1); R.C. 2929.28(A)(2)(a)(i). Accordingly, Lewis's sentence and fine do not offend the maximum-penalty provisions set forth in R.C. 2929.24 and 2929.28, and his sentence is not clearly and convincingly contrary to law. *Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18.

{¶ 45} In sentencing Lewis, the trial court noted his lack of remorse for Babi's behavior. The court further noted that despite Lewis's awareness that Babi tended to be aggressive and had previously attacked Skippy, Lewis failed to take measures that easily could have prevented the fatal attack. Our review of the trial court's reasoning convinces us that the court did not abuse its discretion in sentencing Lewis. Consequently, Lewis's tenth assignment of error is overruled.

### III

{¶ 46} Lewis's seventh assignment of error is sustained, and his S.C.O. convictions are vacated pursuant to that determination. Lewis's fourth assignment of error is moot, and his remaining assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed in part and vacated in part.

Judgment affirmed in part
and vacated in part.

CARR, P.J., and SLABY, J., concur.