[Cite as *State v. McColor*, 2013-Ohio-1279.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 MA 64 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JAMES McCOLOR | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from the Youngstown
                                Municipal Court of Mahoning County,
                                Ohio
                                Case No. 10 CRB 2507

JUDGMENT:                       Affirmed.

APPEARANCES:

For Plaintiff-Appellee:         Atty. Dana Lantz
                                Youngstown City Prosecutor
                                Atty. Bassil Ally
                                Senior Assistant Law Director
                                26 S. Phelps Street
                                Youngstown, Ohio  44503

For Defendant-Appellant:        Atty. Rhys B. Cartwright-Jones
                                42 N. Phelps Street
                                Youngstown, Ohio  44503-1130

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                                Dated:  March 27, 2013

WAITE, J.

{¶1}   Appellant James McColor appeals his sentence imposed after he pleaded guilty to six violations of various Youngstown Municipal dog ordinances following an incident where his pit bulls chased a mother and her daughter.  He was sentenced to 180 days in jail.  Appellant argues that he was sentenced primarily because he did not properly transfer ownership of the dogs after he had been cited for the violations in the instant case.  Appellant asserts that he was never charged with a violation of the dog transfer ordinance, and that the record does not indicate that he violated the dog transfer ordinance.  He contends that the trial court should not have relied on a false accusation about the improper transfer of ownership of his dogs as the basis for sentencing.  Appellant also argues that the sentence should be reversed because the trial judge did not consider any of the misdemeanor sentencing factors found in R.C. 2929.22.  Appellant is mistaken and the trial court is affirmed.

{¶2}   Appellant pleaded guilty to unlawful possession of a pit bull terrier, failure to confine a vicious dog, and failure to maintain insurance for a vicious dog, and he was sentenced on these charges.  The record contains many factors that the trial court relied on in reaching its sentence, including Appellant's extensive prior criminal record, the statement of the victim, the recommendation of the probation department, statements made by Appellant and by the dog warden, and several other documents in the presentence investigation report.  Further, the sentencing judge may rely on uncharged conduct as a factor at sentencing, and it was permissible for the judge to consider whether Appellant violated the dog transfer ordinance even though he was not charged with violating this ordinance.  Although

there is no mention of sentencing factors in the court's judgment entry, it is clear from the sentencing hearing transcript that the judge considered a variety of sentencing factors from R.C. 2929.22 prior to imposing sentence. Hence, the trial court did not err in this matter.

### History of the Case

{¶3}   On December 17, 2010, Appellant was charged with four counts of violating the City of Youngstown ordinances, and eight counts of violating state dog statutes. The charges consisted of four counts of unlawful possession of a pit bull terrier (Municipal Ord. 505.191(B)), four counts of failing to confine a vicious dog (former R.C. 955.22(D)(1)), and four counts of failing to maintain insurance for a vicious dog (former R.C. 955.22(E)). All of the charges were first degree misdemeanors, each punishable by up to six months in jail and a $1,000 fine.

{¶4}   On February 28, 2011, Appellant pleaded no contest to four counts of unlawful possession of a pit bull, one count of failing to confine a vicious dog, and one count of failing to maintain insurance. Appellant was represented by counsel, and a change of plea hearing took place on February 28, 2011. The remaining six counts were dismissed pursuant to Appellant's Crim.R. 11 plea agreement. Appellant was advised of the maximum penalties he faced by entering his plea. A sentencing hearing was held on April 12, 2011. Appellant and his attorney spoke in mitigation of sentence. The charging officer testified about the circumstances of the charges and his prior interactions with Appellant and his dogs. At the end of hearing, the court sentenced Appellant to two consecutive jail terms of 180 days each on two of the counts of illegal possession of pit bulls. The court also imposed community

control sanctions in the form of intensive probation supervision for five years. R.C. 2929.27(A)(5). No jail time was imposed on the remaining charges. Finally, the court ordered fines, court costs, repayment of the costs of community control sanctions, and restitution to the victims. This appeal followed.

ASSIGNMENT OF ERROR NO. 1

The Trial Court Imposed an Unconstitutional Sentence, Based on Perceptions of Mr. McColor's Alleged Criminal Conduct that were Fundamentally Untrue as Matters of Either Fact or of Law.

**{¶5}** The essence of this assignment of error is that Appellant believes he did not receive due process at sentencing and raises three reasons: (1) the court based its sentence, in part, on the assumption that Appellant had transferred ownership of the dogs without first obtaining a transfer of dangerous dog certificate; (2) the court relied on hyperbole at sentencing when it stated that pit bulls "eat little children," (Tr., p. 13.); and (3) the court assumed that the crime in this case was a violation of a dog bite statute, when the crimes involved possessing pit bulls, failing to confine a pit bull, and failure to maintain insurance on a pit bull.

**{¶6}** Appellant contends that a sentence that does not conform to basic due process is invalid and must be reversed. Appellant relies on the case of *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), in which a sentence was reversed because it was based on assumptions about the defendant's criminal record that were materially untrue. The judge assumed that the defendant had previously been convicted of receiving a stolen saxophone, even though that charge had been

dismissed. An additional problem in *Townsend* was that the sentencing judge made a facetious comment about the saxophone ("What did you want with a saxophone? Didn't hope to play in the prison band then, did you?" *Id.* at 740.). The key factor in *Townsend* was that the defendant was without counsel during the entire criminal proceeding. The prosecutor and the court took advantage of his lack of counsel by failing to explain the law and by materially misrepresenting facts. *Id.* at 739-741. Thus, *Townsend* sets standards of due process for uncounseled defendants.

{¶7} The facts of this case are not comparable to those in *Townsend*. First, Appellant was represented by counsel. Appellant has no basis for reliance on a case defining the limits of due process for uncounseled defendants when he had counsel available to protect his rights at sentencing.

{¶8} Second, Appellant acknowledges that he did not obtain a transfer of dangerous dog certificate. Appellant cannot base his argument on the trial court's alleged misrepresentation of this fact when Appellant himself acknowledges the truth of this fact in question. While Appellant contends that he did not need such a certificate, that involves his legal conclusion, not a factual dispute.

{¶9} Third, the fact that Appellant was not charged with failure to obtain a transfer certificate is not a basis for claiming a due process error. Uncharged crimes are relevant to the defendant's social history and may be considered at sentencing. *State v. Johnson*, 7th Dist. No. 10 MA 32, 2010-Ohio-6387, ¶26.

{¶10} Fourth, the court's use of hyperbole in stating that pit bulls "eat children" was not meant to be facetious, but was merely an attempt to dramatize the very significant danger posed when vicious dogs are not properly confined. The judge

could just as easily have said that pit bulls kill, maim, or maul little children. We would not need to look very far for examples of this in recent years and this would not have been hyperbole. In the recent Ohio Supreme Court case of *Toledo v. Tellings*, the court cited evidence that:

> [P]it bulls, compared to other breeds, cause a disproportionate amount of danger to people. The chief dog warden of Lucas County testified that (1) when pit bulls attack, they are more likely to inflict severe damage to their victim than other breeds of dogs, (2) pit bulls have killed more Ohioans than any other breed of dog, (3) Toledo police officers fire their weapons in the line of duty at pit bulls more often than they fire weapons at people and all other breeds of dogs combined and (4) pit bulls are frequently shot during drug raids because pit bulls are encountered more frequently in drug raids than any other dog breed. The trial court also found that pit bulls are "found largely in urban settings where there are crowded living conditions and a large number of children present," which increases the risk of injury caused by pit bulls.

*Toledo v. Tellings*, 114 Ohio St.3d 278, 2007-Ohio-3724, 871 N.E.2d 1152, ¶26.

{¶11} The victims in the instant case, a mother and her daughter, were chased by Appellant's dogs, and the mother was injured when she fell while running away from the dogs. Although the victims were not bitten, the injuries occurred as part of a natural reaction to the fear of being bitten or mauled by a pit bull. It is

beyond dispute that many types of dogs, particularly pit bulls, can and do attack people, and sometimes these attacks are fatal. There was nothing inappropriate in the trial court commenting on this danger even though, as is illustrated by this case, the danger may be more related to the dog owners than the dogs themselves. Thus, the trial court's comment in this case is nothing like the facetious statement about the saxophone made by the trial judge in the *Townsend* case.

**{¶12}** Because Appellant's entire argument is made by analogy to *Townsend*, and because *Townsend* is not applicable, Appellant's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

The Sentence is Contrary to Law, R.C. Chapt. 2929, Insofar as Nothing

of Record Evinces a Need for a Term of Confinement.

**{¶13}** Appellant maintains that the trial court should have sentenced him to community control rather than jail, and that if the court had considered any of the misdemeanor sentencing factors in R.C. 2929.22, community control would have been found to be appropriate. The record of the sentencing hearing shows that the court considered many of the factors found in R.C. 2929.22, and Appellant's argument is without merit.

**{¶14}** We review a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. R.C. 2929.22; *State v. Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, ¶15 (1st Dist.). Abuse of discretion means more than a mere error

of judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶15}** A trial court must consider the criteria of R.C. 2929.22 and the principles of R.C. 2929.21 before imposing a misdemeanor sentence. *State v. Crable*, 7th Dist. No. 04 BE 17, 2004-Ohio-6812, ¶24. R.C. 2929.22(A) gives the trial court discretion in determining the most effective way to achieve the purposes and principles of sentencing. R.C. 2929.22(B) sets forth specific factors for the trial court to consider before imposing a sentence, including the nature and circumstances of the offense, the offender's history of criminal conduct, the victim's circumstances, and the likelihood that the offender will commit future crimes.

**{¶16}** The trial court is not required to state on the record its consideration of sentencing factors when determining a misdemeanor sentence. *Id.* When a misdemeanor sentence is within the statutory range, "a reviewing court will presume that the trial judge followed the standards in R.C. 2929.22, absent a showing to the contrary." *State v. Reynolds*, 7th Dist. No. 08-JE-9, 2009-Ohio-935, ¶21. A silent record gives rise to the presumption that the trial court considered the proper sentencing factors and that its findings were correct. *State v. Best*, 7th Dist. No. 08 MA 260, 2009-Ohio-6806, ¶14; *State v. Downie*, 183 Ohio App.3d 665, 2009-Ohio-4643, 918 N.E.2d 218, ¶48 (7th Dist.).

**{¶17}** The sentence in the instant case is well within the sentencing ranges for the combined potential sentence for six first degree misdemeanors, each of which carried a possible 180-day jail term and $1,000 fine. Appellant was sentenced to two consecutive jail terms of 180 days each, for a total of 360 days in jail, along with

$1,200 in fines. Thus, the question that remains is whether the court abused its discretion in imposing the sentence.

**{¶18}** R.C. 2929.22 states, in pertinent part:

(B)(1) In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors:

(a) The nature and circumstances of the offense or offenses;

(b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;

(c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;

(d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;

(e) Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section.

(2) In determining the appropriate sentence for a misdemeanor, in addition to complying with division (B)(1) of this section, the court may consider any other factors that are relevant to achieving the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code.

(C) Before imposing a jail term as a sentence for a misdemeanor, a court shall consider the appropriateness of imposing a community control sanction or a combination of community control sanctions under sections 2929.25, 2929.26, 2929.27, and 2929.28 of the Revised Code. A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime.

(D)(1) A sentencing court shall consider any relevant oral or written statement made by the victim, the defendant, the defense attorney, or the prosecuting authority regarding sentencing for a misdemeanor.

This division does not create any rights to notice other than those rights authorized by Chapter 2930. of the Revised Code.

**{¶19}** Although the trial court's sentencing entry does not state which specific factors were relied on in determining the sentence, the hearing transcript reflects a consideration of many of the enumerated factors. The court considered the nature of the offenses as all being related to Appellant's ownership and control over pit bull terriers. The court considered Appellant's criminal history as contained in the presentence investigation report (PSI). Appellant's attorney acknowledged the PSI was accurate. (Tr., p. 8.) The court considered the harm to the victims in this case, and the harm posed to future potential victims.

**{¶20}** More specifically, the court considered the nature of the offenses and Appellant's prior violations of the dog statutes, particularly as related by the testimony of Officer Dave Nelson. (Tr., pp. 9-12.) He testified about what occurred when he arrived in response to a call about a dog attack:

MR. NELSON: * * * on December 16th I was contacted by the Youngstown Police Department in reference to a woman that was being attacked on the south side by a pit bull. As I arrived, she was up against her vehicle. The dog was at the curb coming after her. I pulled my service weapon. I tried to get the dog back into the yard. As the dog went to the corner of the house, I pulled in the driveway. At that time three young men pulled up in vehicles and said that I know who

lived there and said get off the property. I had the dog in front of me at gunpoint. I had three guys behind me. I had to call for backup.

(Tr., p. 9.)

{¶21} Officer Nelson also testified about his prior encounters with Appellant and his pit bulls:

MR. NELSON: Okay. We have been dealing with Mr. McColor for months in different locations. He has had a house at 178 East Auburndale that he has had pit bulls residing there. He has had 2371 Mount Vernon pit bulls there, [sic] address on Champlain, as well as an address on Westin Avenue. He was told back then, even months ago he could not get rid of the dogs. He has to do a vicious dog transfer, which requires us to have full knowledge. You just can't give it to the guy down the street. There [are] laws pertaining to that.

* * *

THE COURT: Prior to this event in December did you have any involvement with him?

MR. NELSON: Yes. I had several issues on Westin when he lived there on confinement and restraint of the dogs down there. And I advised him from there it is a matter of $100,000 insurance per dog. They have to be confined. We talked about this. I gave him all my spew about how the law is on the confinement of these animals. He

removed the dogs from there and that's when I believe they were sent to different locations.

THE COURT: Well, Mr. McColor, I get the impression you are going to do what you want to do when you want to do it, how you want to do it.

MR. McCOLOR: No, Your Honor. I never was told that I had to come to him and get them release forms for the dogs. I never was told that. I said everything would have been avoided.

THE COURT: Why would he lie to you?

MR. McCOLOR: I didn't say he lied to me or none of that. I just said I didn't hear that from him.

(Tr., pp. 9-12.)

**{¶22}** The court engaged in an extensive colloquy with Appellant about his mitigation testimony. During this colloquy, the court considered Appellant's lack of remorse, his pattern of disobeying the vicious dog statutes, and his propensity to continue disobeying the law with respect to his dogs. The court was particularly incensed by the fact that Appellant blamed Officer Nelson and the county dog warden for his problems, but would not acknowledge his own responsibility for the crimes. (Tr., p. 16.) Although the word "remorse" is not expressly used in R.C. 2929.22, the references in the statute to the offender's "character and condition," to the offender's likelihood of committing future crimes, and to the discretion the trial court has to consider "any other factors that are relevant," signify that remorse, or the

lack of remorse, are legitimate factors to be considered at sentencing. *See, e.g.,* *Akron v. Lewis*, 179 Ohio App.3d. 649, 2008-Ohio-6256, 903 N.E.2d 352, ¶45 (9th Dist.) (in another case involving violations of dog ordinances); *State v. Samuels*, 8th Dist. No. 81334, 2003-Ohio-2865, ¶45. It is evident from the record that the trial court did actually consider many of the factors listed in R.C. 2929.22, and therefore, Appellant's argument is not persuasive.

**{¶23}** Appellant contends that the court assumed it was punishing him for violating a dog-bite statute, but there is nothing in the record supporting this. In point of fact, the victims were not bitten and there is no discussion about his dogs biting the victims. The general discussion about pit bulls biting people arose from a concern that Appellant had no appreciation of the public danger created when his dogs were allowed to run loose, nor did he show remorse for the legitimate fear the victims had when they were attacked by Appellant's dogs. There is no indication that the trial judge was in any way confused about the nature of the crimes and their related penalties.

**{¶24}** Appellant contends that the trial court did not consider imposing community control sanctions, but the record indicates that one type of community control sanction was incorporated into the sentence: intensive probation supervision. See R.C. 2929.27(A)(5). Since the court actually imposed a type of community control, the record certainly does not support the conclusion that the court failed to consider the factors relating to community control sanctions.

**{¶25}** As there is no indication in the record that any abuse of discretion occurred in sentencing, Appellant's second assignment of error is overruled.

Conclusion

**{¶26}** Appellant alleges error in the sentence imposed after he pleaded no contest to six charges relating to his ownership of pit bulls. Appellant contends that the sentence violates his due process rights under the holding of *Townsend*, *supra*. The *Townsend* case, which dealt with untruthful and facetious comments made at sentencing by a judge and the prosecutor regarding a defendant who did not have counsel, is inapposite to the facts of the instant appeal. Appellant had counsel, and he has not pointed to any untrue or facetious comments at sentencing. The trial judge made a statement about pit bulls that may be described as hyperbole, but the statement was not facetious and was intended to highlight the danger posed by owners who do not control their vicious dogs. Appellant also argues that if the court had considered the proper sentencing factors he would have imposed a less severe sentence that included community control. The record reflects that the court did consider many of the factors contained in R.C. 2929.22, and that the judge actually imposed a type of community control, so the court necessarily considered whether or not to impose community control. Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.