[Cite as *State v. Cross*, 2011-Ohio-3250.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25487 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RANDY JAMES CROSS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 04 0989 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2011

MOORE, Judge.

{¶1}    Appellant, Randy James Cross, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    Randy James Cross was arrested on April 7, 2010, based on an incident that occurred at 738 Hazel Street.  As a result of the incident, on April 12, 2010, Cross was indicted on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fourth degree, one count of aggravated menacing in violation of R.C. 2903.21, a misdemeanor of the first degree, and one count of domestic violence in violation of R.C. 2919.25(C), a misdemeanor of the second degree.  On June 14, 2010, a supplemental indictment was filed and Cross was charged with one count of domestic violence in violation of R.C. 2919.25(A)/(B), a felony of the fifth degree, and one count of violating a protection order in violation of R.C. 2919.27, a misdemeanor of the first degree.

{¶3}    Cross entered a plea of not guilty on May 5, 2010, and the matter proceeded to a jury trial on June 16, 2010.  On June 18, 2010, the jury found Cross guilty of all three counts of domestic violence and guilty of violating a protection order.  The trial court granted his Crim.R. 29 motion as to the aggravated menacing charge.  On June 30, 2010, Cross was sentenced to a total of six months in prison.

{¶4}    Cross timely filed a notice of appeal.  He raises five assignments of error for our review.  We have rearranged the assignments of error to facilitate our review.

II.

**ASSIGNMENT OF ERROR IV**

"THE TRIAL COURT ERRED IN DENYING THE CRIMINAL RULE 29 MOTION FOR ACQUITTAL."

{¶5}    In his fourth assignment of error, Cross contends that the trial court erred in denying his Crim.R. 29 motion for acquittal.  We do not agree.

{¶6}    Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."  When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production.  To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt."  *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶7}    In *State v. Brewer*, "[t]he Ohio Supreme Court emphasized that the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the state in its case in chief, whether such evidence was properly admitted or not." *State v. Freitag*, 185 Ohio App.3d 580, 2009-Ohio-6370, at ¶9, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, at ¶19.

Domestic Violence

{¶8}    Cross    was    convicted    of    domestic    violence    in    violation    of    R.C. 2919.25(A)/(B)/(C), which provides:

> "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

> "(B) No person shall recklessly cause serious physical harm to a family or household member.

> "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶9}    Cross stipulated that, at the time of the alleged violation, he knew that Williams was pregnant and that he and Williams had been living together as family or household members.  In light of the stipulation, he could not challenge those elements.

{¶10}    A neighbor, Brandy Gibbs, testified that on April 7, 2010, she witnessed a verbal and physical altercation at around 12:45 a.m. between the neighbors that resided at 738 Hazel Street.  Gibbs was sitting on her front porch with friends when she heard a female across the street yelling "stop hitting me" and things of that nature.  She saw a man hitting the woman, and the woman trying to get away from him.  Specifically, she saw the man hitting the woman in the face and head area.  The woman then ran down the street to another neighbor's home.

{¶11}    The woman was using the phone on the front porch of the neighbor's house when the man walked down to the porch as well.  He told the woman to come off of the porch, and

when she did so, he grabbed her by the arm and dragged her back down the street. When they returned to 738 Hazel Street, the woman tried to walk up the steps to the residence, and the man grabbed her by her hair. She then tried to walk down the steps, and the man pulled her by the hair, and dragged her up the steps into the house.

{¶12} Once inside of the house, the front door was left open, so Gibbs could hear yelling inside of the house. The woman ran back out of the house again, and again the man pulled her back into the house by her hair. Gibbs heard more yelling inside of the house, and the woman came back outside and sat on the porch. The man came back outside and was "beating her up" and "hitting her everywhere" all while the female was "just sitting there getting beat up."

{¶13} Gibbs further testified that at one point she witnessed two black men walking down the street. She recognized them from the neighborhood, but did not know them personally. The men asked her if they should help the woman. Gibbs responded that she wouldn't help them because the woman had run down to the other porch and had the opportunity to get help if she had wanted it. The men decided to go across the street and ask the man on the porch to borrow a lighter. The man began yelling at the two men and telling them to get away from his yard. The man showed them he had a knife and at one point chased the men down the street with the knife. Eventually the man stopped chasing them and returned to the house. He and the woman were walking back into the house and he was hitting her again.

{¶14} Gibbs testified that the man was hitting the woman "everywhere." She further testified that the man was wearing shorts, and that he had taken off his shirt when he began chasing the two men. Gibbs further testified that the woman was white and that she believed that the woman was wearing a hoodie and pants such that her flesh was covered by the sleeves and the pants. The man and the woman were inside of the residence when the police arrived. She

saw the police knocking on the door and walking around the perimeter of the house. The man was shining a flashlight out of the windows at the police. Eventually, someone opened the door and the police apprehended a man. Gibbs further testified that she had not seen any other people enter or exit the house that night.

{¶15} Wayne Andrews, the sergeant assigned to communications with the Akron Police Department, testified regarding a 911 call on April 7, 2010, concerning 738 Hazel Street. In the call, a woman reported a domestic dispute between a man and his girlfriend at the address. The woman identified herself only as a "concerned neighbor." She mentioned that the girlfriend looked pregnant and that both the man and the woman were white. She further stated that it looked like the woman was trying to leave and the man would not let her. In addition, it looked like the man was shoving the woman around.

{¶16} Michael Koubek, a patrolman with the Akron Police Department, responded to a dispatch call on April 7, 2010, regarding a domestic fight at 738 Hazel Street. He and his partner, Officer Christopher Lepa, arrived on scene within a couple minutes of the 911 call. They had been told that a male and female were outside fighting, and that the male had dragged the female back into the house. After checking out the area, the officers knocked on the door to the residence. A man, later identified as Cross, answered the door shirtless and said, "No, thank you," and walked back into the house. Cross then turned off all of the lights in the house. The officers proceeded to knock on the door five to six times. They also began shining their flashlights into the house to see if they could see him, and Cross began shining a flashlight back at them.

{¶17} Officer Koubek spoke with the neighbor across the street, Gibbs, and learned that weapons were involved. At that point, the officers called for another unit as backup. Once

additional officers arrived, they advised Cross that they were going to have to kick in the door if someone did not answer. A female subsequently came to the door and let the officers in. The officers placed Cross in handcuffs. Another officer, Sergeant Boal, took the female outside to get her statement. Officer Koubek testified that Cross appeared to be intoxicated because he had slurred speech, bloodshot eyes, and smelled like alcohol. Officer Koubek further testified that the officers found a large knife upstairs on the landing of the steps.

{¶18} Brian J. Curtin, a patrol officer with the Akron Police Department, testified that on April 7, 2010, he responded to a call for a backup unit at 738 Hazel Street. When he arrived, the officers were trying to make contact at the front door. Officer Curtin and his partner set up a perimeter around the house. He observed someone flashing a flashlight out toward his face. The officers eventually made entry into the house, and by the time Officer Curtin was inside the suspect was already in handcuffs. He observed a large sheath sitting on the couch. Once the suspect was taken out of the house, he did a protective sweep and found a large knife on the floor of the hallway at the top of the stairs. It was near a window where someone had been shining a flashlight.

{¶19} Christopher Lepa, a patrol officer with the Akron Police Department, testified that on April 7, 2010, he, along with his partner, Officer Koubek, responded to a dispatch call for a domestic fight at 738 Hazel Street. He and Officer Koubek knocked on the front door when they arrived on the scene. When the suspect turned the lights off inside the house, Officer Lepa went to the rear of the house to set up a perimeter while Officer Koubek stayed on the front porch. He stood at the rear of the house when officers went to the front door. When the other officers made entry, he ran to the front and entered the house. By the time he entered the house, Cross was already in handcuffs. Officer Lepa testified that Cross had his shirt off and seemed very agitated

and intoxicated. There was a strong odor of alcohol and his eyes were glassy. He obtained a shirt for Cross and walked him to the police cruiser.

{¶20} Williams testified that on April 7, 2010, she lived at 738 Hazel Street along with her boyfriend, Cross. She testified that on the date in question she was pregnant with his child. That evening, she arrived home from work and found Cross on the front porch with his uncle. She testified that she was upset that the uncle was there because she believed he was a bad influence. She and Cross began arguing on the front porch, and he began calling her names. At one point, she went down to her neighbor's house, Wanda Sams, to use her phone. Williams testified that her cell phone was not working, but that she did have a functioning landline in her home. Williams testified that Cross came down to the neighbor's house and walked her home. She denied that Cross struck her. The neighbor that testified did not directly identify Cross in her testimony in court.

{¶21} While the evidence of domestic violence is circumstantial in that no one directly identified Cross as the individual causing harm, and no one directly identified Williams as the victim, circumstantial and direct evidence "possess the same probative value[.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. "Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for 'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" (Internal quotations omitted.) *State v. Tran*, 9th Dist. No. 22911, 2006-Ohio-4349, at ¶13, quoting *State v. Daniels* (June 3, 1998), 9th Dist. No. 18761, at *2.

{¶22} Gibbs, a disinterested bystander, heard the yelling at 738 Hazel Street, observed a man striking a woman repeatedly, saw the victim leave the porch and walk to the neighbor's house and observed the man pursue her. He removed his shirt while chasing off two interlopers.

That same man pulled the victim into the home by her hair. Gibbs saw no one else enter or leave the home. The police responded within minutes of the anonymous 911 call and found Cross in the house without a shirt. The 911 caller also identified the victim as being a pregnant woman. Cross was reported to have chased two men with a knife. When the police apprehended him, they observed a sheath and a large knife near a window where a flashlight had been shone on them. No other person was found in the home.

{¶23} After viewing the evidence in the light most favorable to the State, we conclude that the trier of fact could reasonably find that the State met its burden of production and presented sufficient evidence to establish Cross' identity and to prove that Cross knowingly caused or attempted to cause Williams harm. *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. Accordingly, this portion of Cross' fourth assignment of error is overruled.

Protection Order

{¶24} Cross was convicted of violating a protection order in violation of R.C. 2919.27, which provides, in pertinent part:

"(A) No person shall recklessly violate the terms of any of the following:

"(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code;

"(2) A protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code[.]"

{¶25} Cross contends that there is insufficient evidence to sustain this conviction because there was no testimony as to the terms of the protection order. We do not agree.

{¶26} A copy of the temporary protection order was admitted in the trial court. In addition, Officer Lepa testified regarding the protection order. The officer averred that a protection order was issued on April 8, 2010, which prohibited Cross from having any contact, including phone contact, with Williams. He further averred that Cross had signed the document.

Additionally, Officer Lepa averred that he heard a recording of a jail call where Cross contacted Williams after the protection order was issued. The recording was then played for the jury. Finally, Williams testified that in one of the jail calls, Cross told her he was aware that there was a temporary protection order, and admitted that the two had telephone contact.

{¶27} After viewing the evidence in the light most favorable to the State, we conclude that the trier of fact could reasonably find that the State met its burden of production and presented sufficient evidence that Cross violated a temporary protection order which prohibited contact with Williams. *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. Accordingly, this portion of Cross' fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS UNSUPPORTED BY THE EVIDENCE."

{¶28} In his first assignment of error, Cross contends that the trial court's judgment is against the manifest weight of the evidence. We do not agree.

{¶29} When a defendant asserts that his conviction is against the manifest weight of the evidence,

"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.

Domestic Violence

**{¶30}** In addition to the previously discussed testimony, Williams testified that on the evening in question, she returned home from work and found Cross on the porch with his uncle. She averred that she and Cross got into a verbal argument. The dispute was over the fact that she asked the uncle to leave. She testified that she noticed Cross had a couple of drinks and that she observed two beer cans.

**{¶31}** At some point, two men approached the house and were allegedly bothering Williams and Cross, making comments, yelling, and throwing rocks at the house. Williams contended that she went to the neighbor's house to call Cross' father to seek help with the two men. She stated that she went to the neighbor's house because her cell phone was not working, and she reacted instinctively after seeing the neighbor outside. She admitted that she did have an operational landline in the home.

**{¶32}** During her testimony, she asserted that she was not testifying on Cross' behalf, but was instead testifying "to tell the truth." She averred that Cross walked down to the neighbor's house, took her by the arm and "gestured" her home. She denied that Cross ever hurt her. When the police arrived, they examined her for injuries, and did not take any pictures. She maintained that she had no injuries or marks.

**{¶33}** Wanda Sams, a neighbor residing at 730 Hazel Street, testified to the events in question. On April 7, 2010, she was sitting outside on her porch. She testified that she is familiar with Cross and Williams because they live near her. She testified that she did not notice anything unusual. She further testified that Williams and Cross may have had a verbal confrontation, but that it was not loud. Williams came to her house, stated that she had a disagreement with Cross, used the phone and sat with her for 15 to 20 minutes. During the call,

Williams did not ask for help.  At one point, Cross came over to the house and got Williams off the porch and they walked back home together.

{¶34}  Sams further testified that she never had drinks with Williams and Cross, and that it would surprise her to learn that Williams testified differently.  She said it would also surprise her to learn that Williams referred to her as a friend, because she considers them only associates. She maintained that she did not see two black men outside, nor did she witness Cross with a knife.  She stated that it would surprise her to learn that Williams testified that she came down to the house to call for help because Williams was not in distress when she came to her porch.  She averred that Williams was wearing a hoodie, and possibly jeans, and that she could not see her arms or legs.

{¶35}  The evidence essentially created a question of credibility between Gibbs and the anonymous 911 caller's testimony and that of Williams and Sams.  This Court has held that, "in reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶35, citing *State v. Jackson* (1993), 86 Ohio App.3d 29, 33.  Furthermore, "[t]he weight to be given the evidence and the credibility of the witness[es] are primarily for the trier of the facts"; in this case, the jury.  Id., citing *State v. Richey* (1992), 64 Ohio St.3d 353, 363.  The jury had the opportunity to weigh the testimony, and listen to the 911 tape, and "did not lose its way simply because it chose to believe the State's version of the events, which it had a right to do.'"  *State v. Feliciano*, 9th Dist. No. 09CA009595, 2010-Ohio-2809, at ¶50, quoting, *State v. Morten*, 2d Dist. No. 23103, 2010-Ohio-117, at ¶28.

{¶36}  After reviewing the entire record, weighing the inferences and examining the credibility of the witnesses, we cannot say that the jury clearly lost its way and created a manifest

miscarriage of justice. *Otten*, 33 Ohio App.3d at 340. Accordingly, this portion of Cross' first assignment of error is overruled.

Protection Order

{¶37} Cross argues that his conviction for violating a protection order is against the manifest weight of the evidence. He asserts the same arguments as his fourth assignment of error, that there was no testimony as to the terms of the protection order and that there was no testimony that Williams did not wish to speak with Cross. These arguments are without merit.

{¶38} A copy of the temporary protection order was admitted in the trial court. Officer Lepa testified that a protection order was issued on April 8, 2010, which prohibited Cross from having any contact, including phone contact, with Williams. He further averred that he had heard a recording of a jail call where Cross contacted Williams after the protection order was issued. The recording was then played for the jury. Finally, Williams testified that in one of the jail calls, Cross told her he was aware that there was a temporary protection order, and admitted that the two had telephone contact.

{¶39} Accordingly, upon review of the record, we do not conclude that "in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. Cross' first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

"THE TRIAL COURT ERRED IN VIOLATING SEPARATION OF POWERS."

{¶40} In his second assignment of error, Cross contends that the trial court erred in violating separation of powers. Because he failed to preserve any objection based on the

separation of powers doctrine, Cross has forfeited this issue and we do not reach the merits of his contentions.

{¶41} "The failure to raise a constitutional issue at the trial level [forfeits] the right to advance a constitutional argument at the appellate level." *State v. McGinnis*, 9th Dist. No. 05CA0061-M, 2006-Ohio-2281, at ¶29, citing, e.g., *State v. Awan* (1986), 22 Ohio St.3d 120, syllabus. While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so. See *State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶11. Cross has not argued plain error and we will not create a plain-error argument on his behalf. Id.

{¶42} At trial, Cross argued that the court could not impose a mandatory prison term in accordance with R.C. 2919.25(D)(5) due to an error in the statute. At the time, the section stated that "the court shall impose a mandatory prison term on the offender pursuant to division (A)(6) of this section[.]" The statute, however, had no section (A)(6). The State argued that the applicable section was instead (D)(6). Cross' counsel argued that the "offenses shall be strictly construed against the state, and liberally construed in favor of the accused." He further argued that "[w]here there is ambiguity in criminal statutes, doubts must be resolved in favor of the Defendant." Counsel sought to have Count 4 dismissed from the indictment. The State argued that the court has the power to correct the one-character typographical error in the statute. The trial court denied the defense motion and said that it would "amend" the statute. Counsel made no objections and made no reference to the doctrine of separation of powers. Because Cross forfeited this issue on appeal and has not argued plain error, we must conclude that his second assignment of error lacks merit. Cross' second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

"THE TRIAL COURT ERRED IN DETERMINING THAT [CROSS] HAD TO SERVE A MANDATORY PRISON SENTENCE."

{¶43} In his third assignment of error, Cross reiterates his argument from the second assignment of error, i.e., that the trial court erred when it interpreted R.C. 2919.25(D)(5) to read "(D)(6)" as opposed to "(A)(6)." We do not agree.

{¶44} At the time, R.C. 2919.25(D)(5) stated, in pertinent part: "if the offender knew that the victim of the violation was pregnant at the time of the violation, a violation of division (A) or (B) of this section is a felony of the fifth degree, and the court shall impose a mandatory prison term on the offender pursuant to division (A)(6) of this section." It is clear that the statute does not contain a section (A)(6), thus, the reference is obviously in error. It was the clear intent of the General Assembly to impose a mandatory prison term if the offender knew that the victim was pregnant. In addition, the plain language of the statute states that it is a felony of the fifth degree. The General Assembly delineated mandatory prison terms in section (D)(6) of the statute. The only applicable provision of that section is (D)(6)(a), which states: "if the violation of division (A) or (B) of this section is a felony of the fourth or fifth degree, except as otherwise provided in division (A)(6)(b) or (c) of *this section*, the court shall impose a mandatory prison on the offender of at least six months." (Emphasis added.) Again, the General Assembly erroneously referred to "this section" as "(A)(6)" where it was in fact a part of section "(D)(6)."

{¶45} Ordinarily, courts "must presume the legislature means what it says; we cannot amend statutes to provide what we consider a more logical result." *State v. Virasayachack* (2000), 138 Ohio App.3d 570, 574. However, as courts have noted, "when the terms of the statute, as written, would never be applicable, and the simple substitution of one character would result in a term that would always be applicable, we must conclude that the statute contains an

obviously typographical error, and we may correct the error and give effect to the obvious intent of the statue." Id., citing *Brim v. Rice* (1969), 20 Ohio App.2d 293. See also *State v. Reineke* (1986), 27 Ohio App.3d 282; *State v. O'Bryan*, 181 Ohio App.3d 247, 2009-Ohio-753.

{¶46} A court should only undertake the extraordinary task of correcting the express language of a statute if both the error and the correct result are obvious. Here, it is clear that the legislature intended that the statute refer to section (D)(6) as opposed to (A)(6). It is noted that R.C. 2919.25(D)(5) has been amended effective September 17, 2010, to replace "(A)(6)" with reference to "(D)(6)." While the choice of language by the trial judge was unfortunate, we do not conclude that it was an attempt to "amend" the statute or overstep judicial powers. The trial court in effect corrected a typographical error in the statute in order to give effect to the clear legislative intent. In the case at hand, the trial court correctly imposed the mandatory prison sentence articulated in section (D)(6). Accordingly, Cross' third assignment of error is overruled.

## ASSIGNMENT OF ERROR V

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADMITTING THE 911 ANONYMOUS CALL."

{¶47} In his fifth assignment of error, Cross contends that the trial court erred in admitting the 911 call. We do not agree.

{¶48} This Court reviews evidentiary rulings for an abuse of the trial court's discretion. *State v. Patel*, 9th Dist. No. 24030, 2008-Ohio-4693, at ¶8. Cross argues that the call was not relevant, that its prejudicial value substantially outweighed its probative value, and that it was hearsay in nature. We do not address the merits of these contentions, however, because he has forfeited the argument based upon Evid.R. 403(A) and did not argue plain error on appeal.

**{¶49}** The law is well settled that failure to contemporaneously object during the identification of a document and testimony regarding it forfeits appellate review. *State v. Gray*, 9th Dist. No. 08CA0057, 2009-Ohio-3165, at ¶7 (challenge to admission of photographs was forfeited where defendant "filed a pre-trial motion in limine, but failed to contemporaneously object during the presentation of and testimony about the photographs[,]" but waited until the close of the State's case to object to the admission of documents.) Here, Cross failed to contemporaneously object during the identification of the 911 tape, the publishing of the tape before the jury, and testimony regarding it. Instead Cross waited until the close of the State's case to raise an objection. Thus, the jury heard both the 911 tape and the testimony concerning the call.

> "[A] motion in limine does not preserve the record on appeal [;] * * * [a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection * * * when the issue is actually reached * * * at trial. The failure to timely advise a trial court of possible error, by objection or otherwise, results in a [forfeiture] of the issue for purposes of appeal." (Internal citations and quotations omitted.) Id.

**{¶50}** See, also, *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, at ¶59; *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, at ¶92 (forfeiture declared where State called a witness who identified photographs of witness and the defendant together flashing gang signs; photo was published to the jury, with no objection by defense until the close of the case when exhibits were offered into evidence). Cross' challenge occurred at the close of the State's case, when the State moved to have its evidence admitted.

**{¶51}** "By forfeiting the issue for appeal, [Cross] has confined our analysis to an assertion of plain error." *Gray* at ¶7, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶23; Crim.R. 52(B). "While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails

to do so." (Citation omitted.) *Akron v. Lewis*, 179 Ohio App.3d 649, 2008-Ohio-6256, at ¶22; App.R. 16(A)(7); App.R. 12(A)(2); Loc.R. 7(B)(7). As Cross did not assert plain error, we will not undertake such analysis. Accordingly, his fifth assignment of error is overruled.

III.

**{¶52}** Cross' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS

BELFANCE, P. J.
CONCURS IN PART, AND DISSENTS IN PART, SAYING:

{¶53}  I concur in the majority's resolution of Mr. Cross' first, second, fourth, and fifth assignments of error.  However, I respectfully dissent from the majority's resolution of Mr. Cross' third assignment of error.

{¶54}  At the time of Mr. Cross' trial and sentencing, R.C. 2919.25(D)(5) provided that if the victim was pregnant at the time of the violation, the violation required the imposition of a mandatory prison term pursuant to (A)(6) of R.C. 2919.25.  As noted by the majority, the section does not contain an (A)(6) subsection.  The trial court concluded in light of the intent of the legislature to impose a mandatory prison term, that the trial court would "amend" the section to read (D)(6) and would impose the prison term that accompanied that subsection.  Such action is not within the power of the courts.  Therefore, I would sustain the assignment of error and remand the matter for the trial court to sentence Mr. Cross under the general felony sentencing guidelines for a fifth-degree felony.


APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.