[Cite as *State v. Turner*, 2017-Ohio-5560.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28298 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARCUS TURNER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 13 09 2664 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2017

HENSAL, Presiding Judge.

{¶1} Marcus Turner appeals his convictions for felonious assault and felony murder from the Summit County Court of Common Pleas. We affirm.

I.

{¶2} The procedural history of this case is set forth in this Court's prior decision in *State v. Turner*, 9th Dist. Summit No. 27532, 2015-Ohio-996. Briefly, Akron police arrested Marcus Turner on September 13, 2013, for the shooting death of a 21-year-old man. *Id.* at ¶ 2. A grand jury subsequently indicted Mr. Turner on counts for aggravated murder, felony murder, felonious assault, having weapons while under disability, and several accompanying specifications. *Id.* The case proceeded to a jury trial. *Id.*

{¶3} The jury found Mr. Turner not guilty of aggravated murder, but guilty of having weapons while under disability. *Id.* at ¶ 3. The trial resulted in a hung jury with respect to the counts for felony murder and felonious assault. *Id.* As a result, the State elected to retry Mr.

Turner on the felony-murder and felonious-assault counts. *Id.* at ¶ 4. Mr. Turner appealed, arguing that a retrial on the felony-murder count would violate his rights under the Double Jeopardy Clause of the United States Constitution. *Id.* at ¶ 6. This Court overruled Mr. Turner's appeal, and the matter proceeded to a second jury trial for felony-murder and felonious-assault counts. *Id.* at ¶ 15. That trial resulted in guilty verdicts, which are the basis of this appeal.

{¶4} Having briefly reviewed the procedural history of this case, we now turn to the underlying facts. Mr. Turner and the victim lived in neighboring apartment complexes. According to a neighbor, she observed the victim and another gentleman, C.S., leave Mr. Turner's apartment one morning carrying electronics and bags of Mr. Turner's belongings. When Mr. Turner returned home from work, she told him that the victim and C.S. had taken items from his apartment. Mr. Turner reported the burglary to the police, but they made no arrests.

{¶5} Later that evening, police responded to calls regarding a shooting at an apartment complex. One of those calls came from C.S., who told the 911 operator that Mr. Turner shot the victim. Upon arriving at the scene, officers observed the victim lying face down outside of C.S.'s girlfriend's apartment. C.S. then emerged from the apartment and explained what had happened, which was recorded on an officer's body camera and played for the jury. Specifically, C.S. told the officers that he had seen Mr. Turner earlier that day, and that Mr. Turner indicated he was going to retaliate against C.S. and the victim for burglarizing his apartment. C.S. further explained that he and the victim had left C.S.'s girlfriend's apartment to buy cigarettes. Almost immediately after leaving the apartment, C.S. saw Mr. Turner in a white t-shirt with a gun in his hand. C.S. then ran back into the apartment, heard multiple gunshots, and called the police. The victim remained outside, and sustained two gunshot wounds to his lower body. Officers later

administered a double-blind photo line-up, and C.S. identified Mr. Turner as the shooter, noting that he was 100% certain.

**{¶6}** Despite identifying Mr. Turner as the shooter on the day of the incident, C.S. repeatedly stated at trial that he could not remember any details surrounding the shooting, and could not identify Mr. Turner as the shooter. He indicated that he had done a lot of drugs that day, and that his memory was not clear. An officer who spoke with C.S. on the day of the shooting, however, testified that there was no indication that C.S. was under the influence of alcohol or drugs, and that he was consistent during his interviews with the police.

**{¶7}** Aside from C.S., one other eye witness testified. That witness testified that he had been visiting a friend's apartment that evening. As he was walking back to his car, he heard a "pop," which prompted him to turn toward the area of the shooting. When he did so, he saw the victim lying face down and man wearing a dark hooded sweatshirt and holding a gun standing over him. He then retreated into his friend's apartment, heard two additional gun shots, and called the police.

**{¶8}** In addition to the testimony of the two eye witnesses, the State presented testimony from several police officers regarding their investigation of the shooting, as well as their ultimate arrest of Mr. Turner the following day at a nearby hotel. Surveillance footage from the hotel showed Mr. Turner checking in on the day of the shooting, leaving a few hours later wearing a dark hooded sweatshirt, and returning after midnight without the sweatshirt. Police arrested Mr. Turner at the hotel without incident, and found over $13,000 in cash in his hotel room. Police did not locate a dark hooded sweatshirt or a gun.

**{¶9}** Mr. Turner's manager testified on behalf of the defense. He testified that Mr. Turner had taken a vacation day on the day of the shooting to deal with the burglary at his

apartment. He also testified that Mr. Turner picked up his paycheck that evening, and that nothing seemed out of the ordinary. The defense also presented testimony from a neighbor, who testified that Mr. Turner started packing up his apartment after the burglary, and that a friend helped him move out that day.

{¶10} The jury ultimately found Mr. Turner guilty of felony murder, the predicate offense of felonious assault, and the accompanying firearm specifications. The trial court merged the two counts, and the State elected to proceed with sentencing on the felony-murder count. The trial court sentenced Mr. Turner to a total of 18 years of incarceration. He now appeals, raising one assignment of error for our review.

II.

ASSIGNMENT OF ERROR

APPELLANT'S CONVICTIONS FOR MURDER AND FELONIOUS ASSAULT WITH GUN SPECIFICATIONS WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OR LAW, AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} In his assignment of error, Mr. Turner challenges both the sufficiency and manifest weight of the evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶12}** When addressing a challenge to the manifest weight of the evidence, we must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins* at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340.

**{¶13}** As previously noted, the jury found Mr. Turner guilty of felony murder and the predicate offense of felonious assault. The felonious-assault statute provides, in part, that "[n]o person shall * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" R.C. 2903.11(A)(2). Additionally, the felony-murder statute provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" R.C. 2903.02(B).

**{¶14}** Mr. Turner challenges the sufficiency of the evidence on the basis that C.S.'s statements to the 911 operator and to the police officers on the day of the shooting were not made under oath. He further challenges the sufficiency of the evidence on the basis that the testimony of the two eye witnesses differed as to what the shooter was wearing (i.e., a white t-shirt and a dark hooded sweatshirt). Mr. Turner's argument, however, sounds in weight, not sufficiency. Having reviewed the record, we cannot say that, viewing the evidence in a light

most favorable to the prosecution, insufficient evidence existed to support Mr. Turner's convictions.

{¶15} With respect to his challenge to the manifest weight of the evidence, Mr. Turner argues that the only evidence supporting his involvement in the shooting came through C.S.'s unsworn statements to the police, which he recanted at trial. Mr. Turner's argument, however, ignores much of the evidence presented at trial. For example, it ignores the testimony of the other eye witness who testified that the shooter was wearing a dark hooded sweatshirt, and the corroborating surveillance footage showing Mr. Turner leaving the hotel wearing a dark hooded sweatshirt, but returning later without it. Further, to the extent that the jury chose to believe C.S.'s statements to the 911 operator and to the police on the day of the shooting, as opposed to his trial testimony wherein he repeatedly stated "I don't remember[,]" it was entitled to do so. *See State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35 ("[c]redibility determinations are primarily within the province of the trier of fact[,]" who is "'free to believe all, part, or none of the testimony of each witness.'"); *State v. Walker*, 55 Ohio St.2d 208, 213 (1978) ("where there is a conflict of evidence, the jury is to resolve the conflict[.]").

{¶16} Having reviewed the record, we cannot say that the jury clearly lost its way when it found Mr. Turner guilty of felony murder and the predicate offense of felonious assault. Accordingly, Mr. Turner's assignment of error is overruled.

III.

{¶17} Marcus Turner's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.