[Cite as *State v. Briggs*, 2019-Ohio-5290.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

DENNIS BRIGGS

    Appellant

C.A. Nos.     18AP0008
                 18AP0023

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE Nos.    2017 CR-B 002198
              2017 CR-B 002201
              2017 CR-B 002199
              2017 CR-B 002200

DECISION AND JOURNAL ENTRY

Dated: December 23, 2019

CARR, Judge.

{¶1} Appellant, Dennis Briggs, appeals the judgments of the Wayne County Municipal Court. This Court affirms.

I.

{¶2} This matter stems out of a series of alleged criminal trespasses that occurred at Humboldt Square, a shopping plaza in Wooster, Ohio. Four separate criminal complaints were filed against Briggs in the Wayne County Municipal Court. Briggs was homeless at the time of the alleged incidents. In each complaint, Briggs was charged with a sole count of criminal trespass in violation of R.C. 2911.21(A)(3). In Case No. 2017CR-B002201, Briggs was charged with trespassing on the premises of Stephen Landers on December 14, 2017. In Case No. 2017CR-B002199, Briggs was charged with trespassing on the premises of Davita Wooster

Dialysis on December 16, 2017. In Case No. 2017CR-B002198, Briggs was charged with trespassing on the premises of Stephen Landers on December 18, 2017. Finally, in Case No. 2017CR-B002200, Briggs was charged with trespassing on the premises of Acceptance Insurance on December 19, 2017. Briggs pleaded not guilty to the charges at arraignment.

{¶3} A public defender was appointed to represent Briggs in the aforementioned cases. Thereafter, the public defender moved to withdraw due to communication issues with Briggs. The trial court granted the motion and the matter proceeded with Briggs representing himself. The State successfully moved to consolidate Case No. 2017CR-B002198 and Case No. 2017CR-B002201 and transfer them to the docket of the judge who was presiding over Case No. 2017CR-B002199 and Case No. 2017CR-B002200.

{¶4} All four cases were initially scheduled to be tried together. On the date of trial, however, the State moved for a continuance on the grounds that two essential witnesses had failed to appear. After discussing whether those witnesses were essential to each individual count, the trial court granted the motion in part and continued the trial for two of the cases. The other two cases proceeded to trial as scheduled.

{¶5} On February 23, 2018, the trial court held a bench trial on the charges in Case No. 2017CR-B002198 and Case No. 2017CR-B002201. One month later, on March 23, 2018, a bench trial was held on the charges in Case No. 2017CR-B002199 and Case No. 2017CR-B002200. The trial court found Briggs guilty of all four counts of criminal trespass. The trial court sentenced Briggs to a total of 30 days in jail.

{¶6} On appeal, Briggs raises two assignments of error. This Court rearranges Briggs' assignments of error to facilitate review.

II.

## ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE
AS A MATTER OF LAW AND WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

{¶7}     In his second assignment of error, Briggs contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. This Court disagrees.

{¶8}     Briggs was convicted of four counts of criminal trespass in violation of R.C. 2911.21(A)(3), which states:

> No person, without privilege to do so, shall * * * [r]ecklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access[.]

{¶9}     Pursuant to R.C. 2901.22(C), a person acts "recklessly" when "with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." "Land or premises" is defined as "any land, building, structure, or place belonging to, controlled by, or in custody of another, and any separate enclosure or room, or portion thereof." R.C. 2911.21(F)(2). "Privilege" is defined as "immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

## Sufficiency of the Evidence

{¶10}  When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.  *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶11}  As noted, above, two separate trials occurred in this case.  The first trial pertained to the incidents that occurred on December 14, 2017 and December 18, 2017.  The second trial pertained to the incidents that occurred on December 16, 2017 and December 19, 2017.

### First Trial

{¶12}  At the first trial that occurred on February 23, 2018, the State presented evidence that supported the following narrative.  In June 2017, Stephen Landers, who serves as the property manager for Humboldt Square, began to receive calls from his tenants about Briggs trespassing in the shopping plaza.  Landers contacted the Wooster police and he was informed that he needed to get the individual tenants to sign no trespass letters.  In addition to signing a no trespass letter himself to cover the common areas in Humboldt Square, Landers testified that he was present when each of his tenants signed letters as well.  Landers collected the forms and gave them to Officer Phillip Coe, who indicated that the Wooster police would monitor the situation.  The State introduced Landers' no trespass letter as an exhibit, as well as the no

trespass letter signed by Becky Macar, the manager of a store in Humboldt Square known as Family Pools and Spas.  The letters were directed to Briggs and signed on June 29, 2017.

{¶13}  On the morning December 14, 2017, Landers observed Briggs in a stationary position on the sidewalk.  When Landers called police, Officer Thomas Webber responded to the scene and found Briggs sitting down on the sidewalk in front of Family Pools and Spas.  Briggs admitted to knowing about the no trespass letters but insisted that the letter regarding Family Pools and Spas had been rescinded.  Officer Webber testified that he had not seen any documentation that the letter had been withdrawn.  The State introduced photographs of the makeshift tent in front of Family Pools and Spas that Briggs was using as shelter.  Officer Webber indicated that Briggs would have had to traverse through the premises controlled by other tenants in order to get to Family Pools and Spas.  Officer Webber asked Briggs to clear the area and told him that he could be arrested if he returned.  On the evening of December 14, 2017, Officer Michael Jewell traveled to Humboldt Square when he was off duty.  At that time, he observed Briggs in front of Family Pools and Spas.  Officer Jewell also saw Briggs walking around in the parking lot in front of the store.

{¶14}  On December 18, 2017, Landers observed Briggs lying down in front of Family Pools and Spas and again contacted police.  Officer Christopher Hartzler responded to the scene and made contact with Landers, who informed him that Briggs had returned despite repeated warnings to not be on the premises.  Officer Hartzler was familiar with the situation because he had accompanied Landers when he went to each individual business in the shopping district to get their signature on the no trespass letters.  Officer Hartzler testified that Landers did not have to coerce the various managers to sign the letters.

{¶15} On the date in question, Officer Hartzler spotted Briggs in front of Family Pools and Spas. Officer Hartzler decided to wait for backup before approaching Briggs. While Officer Hartzler was waiting, Briggs began walking toward a nearby private access road. Officer Hartzler testified that Briggs walked on the sidewalk in front of Acceptance Insurance and Davita Dialysis and then through the parking lot to get to the private access road. Officer Webber arrived soon thereafter and the officers approached Briggs. Officer Hartzler emphasized to Briggs that the scope of the no trespass letters covered not only the inside of the businesses, but also "doorways as well as the private access roads and walkways getting to those businesses[.]" Briggs acknowledged receiving the no trespass letters. Officer Hartzler further informed Briggs that even if he had worked out an arrangement with the manager of Family Pools and Spas, he was still trespassing on the premises of other businesses in order to get that location. Officer Hartzler testified that Briggs "noted that he was aware of that."

{¶16} Briggs called Macar to testify in his defense. Macar acknowledged that she signed the no trespass letter but indicated she did so under duress. When asked if she rescinded the letter, Macar testified that when police contacted her late one night to tell her that Briggs was sleeping in front of her store, she told them to "leave him there" if he had not "done anything criminal[.]" Briggs introduced a letter drafted by Macar in her capacity as manager at Family Pools and Spas, dated January 22, 2018. In the letter directed "To Whom It May Concern," Macar indicated that she was "coerced" into signing the no trespass letter and that she "will not support any trespassing order regarding [Briggs]." Macar testified that because she paid "a very large care and maintenance fee for the parking lot and common areas[,]" she hoped that she had "some say" in what happened there. Macar further testified that before Christmas she gave

Briggs oral permission to be in front of the store and that, in addition to purchasing an electric blanket for him, she further permitted him to use a spa cover for shelter.

Second Trial

{¶17}   At the second trial that occurred on March 23, 2018, the State presented evidence that supported the following narrative.  Officer Phillip Coe of the Wooster police was on patrol on June 29, 2017, when he was notified by dispatch that Landers had contacted police about Briggs sleeping near one of the properties in Humboldt Square.  When Officer Coe contacted Landers, Landers complained that businesses were having issues because Briggs was sleeping under the awning of Family Pools and Spas.  Officer Coe informed Landers that each individual tenant would have to sign a no trespass letter and that a "blanket" letter would not suffice.  Officer Coe drove to Landers's office and gave him the form letters that were to be used.  The State introduced copies of the no trespass letters signed by all of the tenants in Humboldt Square.  All of the letters were dated June 29, 2017.  Officer Coe testified that he personally served Briggs with the no trespass letters.

{¶18}   On the evening of December 16, 2017, Officer Robert Henderson responded to a call that Briggs was at Davita Dialysis, one of the stores in Humboldt Square that had issued Briggs a no trespass letter.  Officer Henderson spoke with Sergeant Jewell, who informed him that Landers had complained that Briggs "was supposedly harassing the people."  Upon arriving at the scene, Officer Henderson found Briggs in front of Davita Dialysis.  Briggs told Officer Henderson that Family Pools and Spas had retracted its no trespass letter and that he was waiting for that business to close so that he could sleep there.  While Briggs attempted to "debate" Officer Henderson about whether he had a right to access Family Pools and Spas, Officer

Henderson simply made a report of the incident and forwarded that report to the prosecutor's office.

{¶19} On the morning of December 19, 2017, Officer Hartzler responded to Humboldt Square in response to a complaint about Briggs. Officer Hartzler had encountered Briggs on "at least three" prior occasions in Humboldt Square. When Hartzler arrived, Briggs was sleeping in front of Family Pools and Spas. Officer Hartzler observed Briggs wake up, gather his belongings, and then walk past Acceptance Insurance. Officer Hartzler made contact with Briggs in front of the store front for Acceptance Insurance. The no trespass letter for Acceptance Insurance was still in place at that time, as was the no trespass letter for the common areas in Humboldt Square. Officer Hartzler called for backup and placed Briggs under arrest. Sergeant Jewell arrived on the scene to assist Officer Hartzler in taking Briggs into custody. Officer Hartzler testified that on the day prior to the December 19, 2017 incident, he had warned Briggs that if he trespassed on the Humboldt Square properties again, he would be arrested. On the morning of his arrest, Briggs again insisted that he had a right to be at Family Pools and Spas. Officer Hartzler testified that while he could not speak to whether Briggs had a right to be at Family Pools and Spas, he had previously notified Briggs that he was "trespassing on every other property in order to get there."[1] Officer Hartzler explained even if the status of the no trespass letter for Family Pools and Spas was uncertain, the remaining no trespass letters remained in place and he operated with the understanding that the owners of those stores had signed the letters.

---

[1] Sergeant Jewell gave similar testimony at the second trial, noting that while Macar may have "verbally rescinded" the no trespass letter, the "actual letter was still in effect[.]" Regardless of the status of Macar's letter, Sergeant Jewell explained that because the other no trespass letters remained in place, Briggs trespassed when he went from "point A to point B[.]"

{¶20} Macar testified at the second trial in her capacity as manager of Family Pools and Spas. Briggs introduced into evidence the same letter introduced at the first trial, wherein Macar indicated that she was coerced into signing the no trespass letter and that she had no issues with Briggs being around her store. Macar testified that she had discussions with the Wooster police prior to the December 16, 2017 incident, where she indicated that Briggs was permitted to stay in front of her store. Macar further testified that she saw no need to submit documentation to rescind the no trespass letter when the Wooster police were aware of her position. Macar indicated that she had "every reason to believe" that Briggs would be free to travel to and from her store.

Discussion

{¶21} Briggs contends that the State failed to demonstrate that he acted without privilege during the four incidents at issue in this appeal. Briggs argues that Landers pressured Macar into signing the no trespass letter and that she ultimately gave him permission to sleep in front of her store. Briggs further emphasizes that Macar notified the Wooster police that she did not want to enforce the no trespass letter. With respect to the incidents involving Acceptance Insurance and Davita Dialysis, Briggs contends that the State failed to present testimony from store owners or managers to verify that Briggs did not have privilege to be at those stores.

{¶22} A review of the State's evidence reveals that Briggs' sufficiency challenge is without merit. Briggs correctly notes that Macar testified at both trials that she was coerced to sign the no trespass letter and that she later granted him permission to stay in front of Family Pools and Spas. We remain mindful, however, that we must construe the evidence in the light most favorable to the State in resolving a sufficiency challenge. *See Jenks*, 61 Ohio St.3d at 279. The State introduced the no trespass letter signed by Macar on behalf of Family Pools and Spas,

as well as the letter signed by Landers covering the common areas in Humboldt Square. With respect to the incidents on December 14, 2017 and December 18, 2017, Briggs was charged with trespassing on the premises of Landers, who signed the letter covering the common areas. The State not only presented evidence that Briggs was sitting in front of Family Pools and Spas, but also that he was in the common areas in Humboldt Square on both dates, including the parking lot. Briggs had to traverse in front of other store fronts and in the common areas of Humboldt Square in order to get to and from Family Pools and Spas. In regard to the incidents that occurred on December 16, 2017 and December 19, 2017, the State presented evidence that police found Briggs in front of Davita Dialysis and Acceptance Insurance on those respective dates. The State introduced the no trespass letters pertaining to those two businesses and there was no evidence that either business had rescinded their letters. The aforementioned evidence, when construed in the light most favorable to the State, was sufficient to sustain Briggs' convictions for criminal trespass.

### Weight of the Evidence

{¶23} When a defendant argues that his conviction was contrary to the weight of the evidence, this Court must review all of the evidence before the trial court:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v.*

*Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶24} Briggs offers a bevy of arguments in support of his manifest weight challenge.

{¶25} Briggs' foremost argument stems from the fact that Landers identified a man named Kong Khieu as the owner of Humboldt Square during the first trial, while Officer Coe suggested that a man named Jerry Baker was the owner during the second trial. Briggs asserts that this contradictory testimony casts doubt on whether Landers was an agent of the owner who had authority to sign a no trespass order. As an initial matter, there were two separate trials below and it is axiomatic that Briggs cannot use testimony from one trial to challenge the credibility of the testimony at the other trial. Moreover, while there was some incongruous testimony regarding who owned Humboldt Square, there was no evidence that called into question the fact that Landers served as property manager at the time of the incidents. Any doubt about who owned Humboldt Square was erased during the second trial when Macar clarified that Baker was the former owner and Kong Khieu was the owner at the time of the incidents. It follows that the testimony regarding the ownership of Humboldt Square did not weigh against Briggs' convictions.

{¶26} In further support of his manifest weight challenge, Briggs renews his assertions that Macar signed the no trespass letter under duress and that it was unclear who signed the no trespass letters on behalf of Davita Dialysis and Acceptance Insurance. Landers testified that he went to each tenant in Humboldt Square and secured signatures on the no trespass letters. While Macar claims she felt pressured to sign the letters, Officer Hartzler testified that the tenants were not coerced to sign the letters. The mere fact that an appellant identifies contradictory testimony does not support a reversal on manifest weight grounds as the trier of fact "is free to believe all,

part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35. Even assuming arguendo that Macar took the steps necessary to rescind her no trespass order, Lander's letter covering the common areas remained in place. Thus, Briggs' convictions for the incidents on December 14, 2017 and December 18, 2017 must stand as he was spotted in the common areas of Humboldt Square on those dates. At the second trial, the State introduced the no trespass letters of all the tenants in Humboldt Square, including Davita Dialysis and Acceptance Insurance. The letters from each of those business was directed to Briggs, signed, and dated June 29, 2017. Absent any evidence to the contrary, we cannot accept Briggs' position that the weight of the evidence supports the conclusion that either the signatories did not have authority to sign the no trespass letters, or that those businesses rescinded their letters.

## Conclusion

{¶27} As Briggs' convictions were supported by sufficient evidence and were not against the weight of the evidence, his second assignment of error is overruled.

## **ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED STATE'S WITNESS TO TESTIFY ABOUT HEARSAY STATEMENT IN VIOLATION OF BRIGGS['] RIGHT TO CONFRONT WITNESSES PROTECTED BY THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION.

{¶28} In his first assignment of error, Briggs contends that the trial court committed reversible error when, at the second trial, it permitted Officer Coe to comment on Landers's conversation with police dispatch that occurred on June 29, 2018. Briggs maintains that Officer Coe's testimony violated his right to confront witnesses protected by the Sixth Amendment of the United States Constitution. This Court disagrees.

{¶29} At the outset of the second trial, the State noted on the record that Landers was unavailable to testify. The State asked the trial court to take judicial notice from Landers' testimony in the first trial. When Briggs indicated that he was unwilling to stipulate to the admission of Landers' testimony from the first trial, the trial court declined to take judicial notice of that testimony.

{¶30} The first witness to testify on behalf of the State at the second trial was Officer Coe, who indicated that he was on patrol on June 29, 2017. The State asked Officer Coe if he came into contact with Stephen Landers on that date. Officer Coe responded in the affirmative. When asked to elaborate, Officer Coe testified as follows:

> I was notified by dispatch that a Stephen Landers called into dispatch and was requesting one of us to give him a call about Dennis Briggs sleeping near one of the properties that he manages * * *[.] I called Stephen and he informed me that, uh, that business was having issues with Dennis Briggs recently. And he said that [Briggs] had been sleeping under the awning of Family Pools and Spas. Customers that were going there were kind of nervous in the morning with Dennis being there and his renter was requesting that [Briggs] be no trespassed.

{¶31} A review of the trial transcript reveals that Briggs did not object to the aforementioned testimony. Though Briggs refused to stipulate to the admission of Landers' testimony from the first trial, he did not object to Officer Coe's testimony set forth above. Thus, Briggs has forfeited all but plain error. *See Cross*, 2011-Ohio-3250, at ¶ 41 (noting that the failure to raise a constitutional issue before the trial court results in forfeiture of that issue on appeal). "While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain error analysis if a defendant fails to do so." *Id*. As Briggs has not argued plain error on appeal, this Court declines to create an argument on his behalf. *Id*.

{¶32} The first assignment of error is overruled.

III.

{¶33} Briggs' assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.