[Cite as *State v. Villegas*, 2019-Ohio-823.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No.     17CA011172 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| NICOLE VILLEGAS | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.     14CR090804 |

## DECISION AND JOURNAL ENTRY

Dated: March 11, 2019

SCHAFER, Presiding Judge.

{¶1}  Defendant-Appellant, Nicole Villegas, appeals her convictions from the Lorain County Court of Common Pleas.  For the reasons that follow, this Court affirms.

I.

{¶2}  In the early morning of November 24, 2014, the Elyria Police Department responded to a call reporting a shooting incident.  Upon arrival, officers discovered that the victim, L.C., had died as a result of a gunshot wound.  Ms. Villegas was arrested and charged in connection with L.C.'s death.  On December 30, 2014, the Lorain County Grand Jury returned a four-count indictment, charging Ms. Villegas with the following: one count of murder in violation of R.C. 2903.02(A), one count of murder in violation of R.C. 2903.02(B), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of felonious assault in violation of R.C. 2903.11(A)(2).  A firearm specification was attached to each count in the indictment.  Ms. Villegas entered a plea of not guilty to all charges.

{¶3} After a lengthy period of pretrial proceedings, a jury trial commenced on April 25, 2017. The jury returned verdicts finding Ms. Villegas guilty on count two, murder with a firearm specification; guilty on count three, felonious assault with a firearm specification; and guilty on count four, felonious assault with a firearm specification. The jury found Ms. Villegas not guilty of murder as charged in count one, but found her guilty of the lesser included offense of reckless homicide. The trial court issued a judgment entry of conviction sentencing Ms. Villegas on June 27, 2017.

{¶4} Ms. Villegas timely appeals her conviction and presents three assignments of error for our review. For ease of analysis, we consolidate her second and third assignments of error.

II.

**Assignment of Error I**

**Ms. Villegas was prejudiced and denied due process when the trial court failed to excuse biased jurors for cause after they pledged to give more credibility to police officer testimony.**

{¶5} On appeal, Ms. Villegas contests the trial court's denial of her challenge to remove "eight biased jurors" for cause pursuant to R.C. 2313.17(B)(9). Additionally, Ms. Villegas argues that the trial court improperly forced her to use her peremptory challenges to remove jurors who should have been removed for cause. Ms. Villegas contends that she was prejudiced in that she was left "with fewer peremptory challenges than provided by law."

{¶6} A trial court has broad discretion in determining a prospective juror's ability to be impartial. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 94. Therefore, "[a] trial court's ruling on a challenge for cause will not be disturbed on appeal absent an abuse of discretion." *Id.*, citing *State v. Cornwell*, 86 Ohio St.3d 560, 563 (1999).

{¶7} Pursuant to R.C. 2313.17(B)(9), it is good cause for challenge to a potential juror where the "person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court." As this Court has previously stated,

> [i]n cases where a juror gives conflicting answers regarding a possible bias, the trial court must determine which answer truly reflects the prospective juror's state of mind. As long as a trial court is satisfied, following additional questioning of the prospective juror, that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause.

(Internal citations and quotations omitted.) *Giusti v. Felten*, 9th Dist. Summit No. 26611, 2014-Ohio-3115, ¶ 7.

{¶8} During voir dire, Ms. Villegas queried the venire as to whether the testimony of a law enforcement officer should carry more weight than the testimony of any other witness. That question prompted a dialogue between trial counsel for Ms. Villegas and a number of venirepersons, several of whom expressed an inclination to find the testimony of a law enforcement officer to be more credible than testimony of other types of witnesses.

{¶9} Ms. Villegas's trial counsel then posed a similar question to the venire to test for bias or prejudice:

> So my last question, because it's a little concerning that some of you may give more credibility to an officer of the law as opposed to any other witness, does anybody feel that that will create a bias or prejudice in this case?

Some potential jurors spoke up to state that they believed they may have a bias in favor of the testimony of a law enforcement officer. Some jurors engaged in a discussion relative to the topic or expressed confusion as to the issue. The record reflects that most potential jurors gave no indication of a bias or prejudice.

{¶10}  Ms. Villegas moved the trial court to strike potential juror No. 1 for cause, because "she said she would give [law enforcement] testimony more weight, more credibility and even if instructed she would still give an officer's testimony more weight."  She also moved to strike potential jurors Nos. 2, 3, 4, 5, 7, 8, 9, 10 and 15 for cause because "[t]hey all said they would give more credence to law enforcement than to any other witness, or credibility, even if instructed not to."  Ms. Villegas's trial counsel further stated, "And I believe [potential juror No. 15], talked about biases that he might not be able to overcome."  She also indicated that potential juror No. 5 was "very concerning" because he "[s]aid he couldn't be impartial."  Counsel also expressed that there were unspecified "others" in this category.

{¶11}  The trial judge decided that the best course of action was for the court to examine the entire venire in order to clarify the question and ensure that the record contained a specific answer from each juror as to his or her position on the issue of law enforcement officer testimony.  After an initial inquiry, the trial judge briefly explained jury instructions regarding the credibility of witnesses and weight of the evidence, and further explained that these rules apply equally to testimony from a law enforcement officer.  He then asked each potential juror to indicate how, if instructed to consider the testimony of any law enforcement officer the same as any other witness, the instruction would impact his or her consideration of an officer's testimony.  Of the twenty three potential jurors questioned, only Nos. 5 and 15 expressed an unwillingness or inability to follow the instructions and give proper weight to testimony of a law enforcement officer.  Consequently, the trial court stated that it would grant the release of potential jurors Nos. 5 and 15.  Thereafter, Ms. Villegas confirmed her specific and continuing objection to potential jurors Nos. 1, 2, 8, 9, and 10.

{¶12} On appeal, Ms. Villegas challenges the impartiality of potential jurors Nos. 2, 8, 9, 10, 13, 16, 17, and 19. She asserts that these eight jurors all disclosed through questioning during voir dire an inability to be fair and impartial. According to Ms. Villegas, these eight jurors "expressed views that would prevent or substantially impair [their] performance [as jurors] and showed a lack of fairness and [partiality] toward law enforcement officers[.]" Of these potential jurors, the State used peremptory challenges to strike potential jurors Nos. 16 and 17. Ms. Villegas used four of her peremptory challenges to strike potential jurors Nos. 2, 8, 10, and 13; however, Ms. Villegas had not maintained an objection to potential juror No. 13. Ms. Villegas did not use a peremptory challenge as to either jurors No. 9 or 19, and both were empaneled.

{¶13} Regarding potential jurors No. 9 and 19, Ms. Villegas argues on appeal that the trial court's questioning during voir dire was essentially an unsuccessful attempt to rehabilitate biased jurors. Initially, potential juror No. 19 indicated that she thought she "would consider a police officer higher," but then responded, "Yes. No problem." when the trial court questioned her ability to follow the court's instructions on credibility of testimony and weight of evidence.

{¶14} Ms. Villegas claims that "there was no information presented that shows [potential juror No. 19] would have been entirely unbiased." However, Ms. Villegas did not use a peremptory challenge to strike potential juror No. 19, and this Court's review of the record shows that Ms. Villegas never challenged potential juror No. 19 for cause but, instead, raises the argument that she should have been removed for cause for the first time on appeal. Because she failed to challenge this juror for cause and failed to use a peremptory challenge, Ms. Villegas waived any objection to that juror's service and our review is limited to plain error. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 72, *State v. Mammone*, 139 Ohio St.3d 467, 2014-

Ohio-1942, ¶ 79. In her merit brief, Ms. Villegas failed to argue or demonstrate the existence of plain error regarding alleged bias that would have required the removal of potential juror No. 19, and this Court will not attempt to construct such an argument on her behalf. *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41, citing *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006–Ohio–4925, ¶ 11 ("While a defendant who forfeits such an argument still may argue plain error on appeal, this [C]ourt will not sua sponte undertake a plain-error analysis if a defendant fails to do so.").

{¶15} Ms. Villegas also argues that there was no information presented to show that potential juror No. 9 was entirely unbiased. Following the trial court's release of potential jurors No. 5 and 15, Ms. Villegas continued to object to potential jurors No. 1, 2, 8, 9, and 10. Of these five, she used peremptory challenges to strike Nos. 1, 2, 8, and 10. Thus, while Ms. Villegas did eventually exhaust all of her peremptory challenges, she did not use a peremptory challenge to strike potential juror No. 9. "As a matter of state law, we have 'recognized that where the defense exhausts its peremptory challenges before the full jury is seated, the erroneous denial of a challenge for cause in a criminal case may be prejudicial.'" *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 87, quoting *State v. Cornwell*, 86 Ohio St.3d 560, 564, (1999). However, where a defendant is not forced to exhaust his peremptory challenges based on the trial court overruling a challenge for cause, he cannot then complain of prejudicial error. *Id*. quoting *State v. Eaton*, 19 Ohio St.2d 145 (1969), paragraph one of the syllabus. "Thus, '[i]f the trial court erroneously overrules a challenge for cause, the error is prejudicial only if the accused eliminates the challenged venireman with a peremptory challenge *and* exhausts his peremptory challenges before the full jury is seated.'" (Emphasis sic.) *Id*. quoting *State v. Tyler*, 50 Ohio St.3d 24, 30-31, (1990).

**{¶16}** Here, Ms. Villegas did not exercise one of her five peremptory challenges in response to the trial court overruling her challenge to remove potential juror No. 9 for cause. Although Ms. Villegas ultimately did use all of her peremptory challenges before the jury was empaneled, she has not asserted that she was unable to use a peremptory challenge to strike potential juror No. 9, and has not presented any argument or explanation as to why she failed to use a peremptory challenge to do so. Ms. Villegas has not demonstrated that she was forced to use or exhaust her peremptory challenges to excuse potential juror No. 9 and, therefore, she has not shown that she was prejudiced when the trial court overruled her challenge for cause.

**{¶17}** Moreover, Ms. Villegas has not identified any evidence in the record to establish that potential juror No. 9 was unable to be a fair and impartial juror or that he would not follow the law as given by the court. *See* R.C. 2313.17(B)(9). Nor has she shown any prejudice, partiality, or unsuitability in potential juror No. 9 to demonstrate an abuse of discretion in the trial court's decision to overrule her challenge for cause. *See* R.C. 2313.17(D). During voir dire, potential juror No. 9 responded to the trial judge's question stating that he agreed with the statement made by another potential juror, and "would give a lot of credibility" to an officer's testimony. Subsequently, in response to the trial court's final query, he stated that he would be able to keep an open mind based on the court's instructions for considering the credibility of witnesses and weight of evidence. "'As long as a trial court is satisfied, following additional questioning of the prospective juror, that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause.'" *State v. Swift*, 9th Dist. Summit No. 27084, 2014-Ohio-4041, ¶ 4, quoting *State v. Moss*, 9th Dist. Summit No. 24511, 2009-Ohio-3866, ¶ 11. In light of the trial court's broad discretion to determine impartiality, we pay deference to the trial judge who sees and hears the juror when a potential juror is challenged for

bias. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 11, quoting *State v. White*, 82

Ohio St.3d 16, 20 (1998). Ms. Villegas has failed to demonstrate that the trial court abused its

discretion in denying the initial challenge for cause against potential juror No. 9.

{¶18} Ms. Villegas's first assignment of error is overruled.

## Assignment of Error II

**The trial court erred in admitting prior text messages to and from different phones as they were not properly authenticated and their admission is unduly prejudicial and not properly admitted as a business record exception to the hearsay rule.**

## Assignment of Error III

**The trial court's admission of the text message evidence pursuant to [Evid.R.] 801(D)(2)(a) deprived Ms. Villegas her right to a fair trial.**

{¶19} At a pretrial hearing, the parties presented argument regarding the State's motion

in limine and Ms. Villegas's response thereto. The State requested a preliminary ruling as to the

admissibility of text messages extracted from various cell phones. The State asserted that the

text messages from Ms. Villegas were not hearsay and admissible under Evid.R. 801(D)(2), and

the text messages from L.C. were admissible as nonhearsay because they were not being offered

for the truth of the matter asserted. In the motion, the State indicated that it would authenticate

the text messages through the testimony of the detective who extracted the messages from the

cell phones obtained as evidence. Additionally, the State asserted that the text messages would

also be admissible pursuant to Evid.R. 404(B) and R.C. 2945.59 to show motive, intent, and the

absence of mistake or accident on Ms. Villegas's part. In response, Ms. Villegas argued that the

text messages the State sought to introduce were unfairly prejudicial and not significantly

probative. In the alternative to excluding the text messages on this basis, Ms. Villegas urged the

trial court to admit all the text messages between herself and L.C. rather than just those text

messages the State wanted to introduce. Upon the conclusion of the hearing, the trial court deferred ruling on the admissibility of the text messages and took the matter under advisement.

{¶20} After the jury was empaneled, and just prior to the commencement of trial, the trial court ruled on the motion in limine and stated that, while the court can appreciate Ms. Villegas's position that some of the statements contained in the text messages are prejudicial, "in the totality of it, it's prejudicial to both the [victim, L.C.,] and Ms. Villegas, No. 1, because of their language, and, No. 2, because they contain a lot of information that [L.C.] was involved in the illegal drug trade." The trial court discussed the parties' theories of the case and possible lesser included offenses, and concluded

> that the probative value of those text messages, whether they are evidence of the provocation of the victim or the passion, or not, of [Ms. Villegas], I find that their probative value outweighs their prejudicial impact, and find that they will allow the State to utilize that as an exhibit during its presentation of its case-in-chief.

Further, the trial court ruled that the text messages between Ms. Villegas and L.C., starting approximately a month and a half before the shooting, were within a sufficiently close time frame and probative as to the course of conduct between Ms. Villegas and the victim during that stretch of time. Ms. Villegas did not object to the trial court's ruling on the admissibility of the text messages.

{¶21} At trial, Officer Daniel Sumpter, a detective with the Elyria Police Department, testified that a total of seven cell phones were collected through the course of the investigation: one was obtained from Ms. Villegas at the scene of the incident, and the others were obtained either from the scene or retrieved as a result of the execution of search warrants. Officer Sumpter obtained search warrants that allowed him to retrieve information from these phones. He testified that the information obtained from the phones was important to the investigation because it can give detectives insight and information as to the events leading up to the incident.

Officer Sumpter also testified about his qualifications and certification for digital forensics in law enforcement. He testified as to his experience in, and the process for, forensic extraction of data from phones and for analyzing or interpreting that data. Officer Sumpter testified extensively regarding the contents of the report of the text messages he extracted from phones used by Ms. Villegas and the victim, respectively.

**{¶22}** On appeal, Ms. Villegas argues that it was improper for the trial court to admit into evidence over 4,000 text messages exchanged between Ms. Villegas and the victim. In her brief, Ms. Villegas asserts that "the [text messages] were not properly authenticated pursuant to Evid.R. 901(B)(6)[,]" and that they "qualify as business records under Evid.R. 803(6)." Ms. Villegas acknowledges that she did not object to the admission of the text messages on the grounds of Evid.R. 901(B)(6) or Evid.R. 803(6) at trial, but argues that the admission of the text messages is plain error. Also in her second assignment of error, Ms. Villegas argues that the text messages should have been excluded under Evid.R. 403(B). In her third assignment of error she reiterates this Evid.R. 403(B) argument and contends, in the event this Court should determine "that the text messages are not hearsay pursuant to Evid.R. 801(D)(2)(a), then an analysis pursuant to Evid.R. 403(B) is appropriate."

## A. Evid.R. 901(B)(6) or Evid.R. 803(6)

**{¶23}** The parties agree that a plain error standard applies to this Court's review of Ms. Villegas's challenges to the admission of error under Evid.R. 901(B)(6) or Evid.R. 803(6). Plain error may only be invoked where the following three elements exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

*State v. Consilio*, 9th Dist. Summit No. 28409, 2017-Ohio-7913, ¶ 7, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). There is a discretionary aspect of Crim.R. 52(B), and reviewing courts should take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶24} Ms. Villegas discusses in her brief that hearsay is generally inadmissible unless it falls within an exception, such as the business records exception under Evid.R. 803(6). Evid.R. 803 states, in pertinent part, that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:"

> **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Evid.R. 803(6).

{¶25} Ms. Villegas argues that the text messages were not properly authenticated as business records through Evid.R. 803(6), contending that:

> no evidence was presented to show that the text messages were regularly recorded in a regularly conducted activity; no representative from the phone company was introduced with knowledge of the messages; whether they were recorded at or near the time of the transaction; and a foundation was not laid by the []custodian of the record or by some []other qualified witness.

Ms. Villegas contends that the testimony of Officer Sumpter to authenticate the text messages was insufficient because the State "did not present any testimony from the cell phone company's

custodian of records." Thus, it appears that Ms. Villegas's argument is based on a presumption that the text messages are hearsay and then further on the premise that the business record exception of Evid.R. 803(6) was the only possible exception under which the text messages could have been admitted.

{¶26} Before this Court can consider whether the text messages were properly authenticated and admitted under the hearsay exception for business records, Ms. Villegas must first demonstrate that the exception is applicable, in that the text messages are (1) hearsay, and (2) business records. Ms. Villegas has failed to establish either and, accordingly, has failed to support her contention that the text messages were not properly authenticated or admitted as business records pursuant to Evid.R. 803(6). Because Ms. Villegas has not demonstrated the applicability of Evid.R. 803(6), her argument that the trial court committed plain error in admitting the text messages on such grounds lacks merit.

{¶27} In her brief, Ms. Villegas references Evid.R. 901(B)(6), which provides an "example[] of authentication or identification conforming with the requirements of [Evid.R. 901]" in the context of telephone conversations as follows:

> Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (b) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

However, Ms. Villegas does not provide support for this contention, in that she fails to demonstrate the relevance of Evid.R. 901(B)(6) to the admission of an exhibit containing a record of her text messages with the victim.

{¶28} Within her brief, Ms. Villegas states, "Officer Sumpter's testimony did not provide an adequate foundation for the records pursuant to both *Evid.R. 901(A)* and 803(6)."

(Emphasis added.) Evid.R. 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." To the extent that Ms. Villegas might have intended to base her argument on Evid.R. 901(A), we conclude that she has failed to assert any argument independent of her Evid.R. 803(6) argument to demonstrate that Officer Sumpter failed to properly authenticate the text messages or that the trial court erred by admitting them.

{¶29} Therefore, we conclude that Ms. Villegas has not demonstrated any of the three elements required to show plain error based on her Evid.R. 901 or Evid.R. 803(6) arguments.

## B. **Evid.R. 403(A)**

{¶30} Ms. Villegas also asserts a limited argument that the text messages should have been excluded based on Evid.R. 403(A). She states that the text message records were "unduly prejudicial and inflammatory" and "not relevant to any material fact[.]" Ms. Villegas acknowledges in her brief that she did not properly preserve an objection to the admission of the text messages on this basis and, therefore, failed to preserve the issue. Accordingly, she asserts that a plain error review applies to this issue as well.

{¶31} Pursuant to Evid.R. 403(A), "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Ms. Villegas makes reference to issues she raised in the trial court regarding the risk of prejudice and lack of relevance of the text messages. Other than asserting that the admission of the text message records was unduly prejudicial and inflammatory because of the harsh and vulgar language, she fails to develop any meaningful argument to

support this statement or to demonstrate that the trial court erred by declining to exclude the text messages on these grounds.

{¶32} Additionally, in her brief Ms. Villegas states rather generically that the admission of the text message "records as a whole" were inflammatory and prejudicial. However, Ms. Villegas contradicted her own argument when she stated her request to the trial court that, if any text messages are allowed in, that they all come in. In fact, the trial court reasoned that "both sides seem to be comfortable that if they come in, they all come in." Therefore, to the extent that there may have been any error in the trial court's action, Ms. Villegas invited the error and may not take advantage of an error which she herself invited or induced. *State v. Edwards*, 9th Dist. No. 28164, 2017-Ohio-7231, ¶ 37, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324 (2000).

{¶33} Lastly, Ms. Villegas contends that "the last text message relevant to the cause was sent three days prior to the shooting of [the victim] and was too far removed from the event to be admitted." Ms. Villegas has not identified the particular message she refers to, and has not presented any argument to explain how the timing of "the last text message" diminishes the probative value of the evidence such that it would be inadmissible under Evid.R. 403(A).

{¶34} We conclude that Ms. Villegas has not demonstrated any of the three elements required to show plain error in the trial court's decision overruling Ms. Villegas's motion in limine on the basis of Evid.R. 403(B).

{¶35} Ms. Villegas's second and third assignments of error are overruled.

III.

{¶36} Ms. Villegas's first, second, and third assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

DENISE G. WILMS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.